**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**CASE NO.**
**25-4526**

**UNITED STATES OF AMERICA,**

**Appellee,**

**v.**

**STEVEN DAVID SEEGER,**

**Appellant.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

# APPELLEE'S BRIEF

MATTHEW L. HARVEY
UNITED STATES ATTORNEY

Kimberley D. Crockett
Assistant United States Attorney
217 W. King Street
Martinsburg, WV 25401
(304) 262-4590

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... iii

STATEMENT OF JURISDICTION .......... 1

RESTATEMENT OF THE ISSUES .......... 2

STATEMENT OF CASE .......... 3

SUMMARY OF ARGUMENT .......... 10

I. The district court properly denied Seeger's Motion to Suppress because the deterrent value of exclusion is minimal where, as the district court found after a two-day evidentiary hearing and testimony by the officer, the officer's conduct was not intentional, but the result of simple negligence and inadvertence .......... 13

A. Standard of Review .......... 13

B. Argument .......... 13

i. The district court did not clearly err when it found there was no warrant .......... 14

ii. The district court did not clearly err when it found the violation was the result of isolated, simple negligence and, therefore, application of the exclusionary rule was unwarranted .......... 15

iii. The district court did not clearly err when it found the search warrant affidavit possessed the necessary nexus between Seeger and the address to be searched .......... 23

II. The district court properly denied Seeger's Motion for *Franks* Hearing because Seeger failed to make a substantial preliminary showing of falsehood or reckless disregard for the truth .......... 25

A. Standard of Review .......... 25

B. Argument .......... 25

III. Seeger's insufficiently preserved remaining challenges to the warrants - staleness and delay - fail under plain error or de novo review ... 30

A. Standard of Review ... 30
B. Argument ... 31
i. Seeger's staleness argument fails ... 32
ii. Seeger's delay argument fails ... 37

CONCLUSION ... 43

## TABLE OF AUTHORITIES

Page(s)

Cases

*Arizona v. Evans*,
514 U.S. 1 (1995) ..... 15, 17

*Colorado v. Connelly*,
479 U.S. 157 (1986) ..... 20

*Davis v. United States*,
564 U.S. 229 (2011) ..... 16, 17, 20, 22

*Franks v. Delaware*,
438 U.S. 154 (1978) ..... 25, 26

*Henderson v. United States*,
568 U.S. 266 (2013) ..... 31

*Herring v. United States*,
555 U.S. 135 (2009) ..... passim

*Hudson v. Michigan*,
547 U.S. 586 (2006) ..... 20, 22

*Illinois v. Krull*,
480 U.S. 340 (1987) ..... 17, 21

*Illinois v. McArthur*,
531 U.S. 326 (2001) ..... 38

*Katz v. United States*,
389 U.S. 347 (1967) ..... 14

*Ornelas v. United States*,
517 U.S. 690 (1996) ..... 13

*Peffer v. Stephens*,
880 F.3d 256 (6th Cir. 2018) ..... 24

*Pennsylvania Bd. of Probation and Parole v. Scott*,
524 U.S. 357 (1998) ..... 22

*Rosales-Mireles v. United States*,
585 U.S. 129 (2018) ..... 31

*Segura v. United States*,
468 U.S. 796 (1984) ..... 38

*Silverman v. United States*,
365 U.S. 505 (1961) ..... 14

*United States v. Allen*,
631 F.3d 164 (4th Cir. 2011) ..... 25, 36

*United States v. Anderson*,
851 F.2d 727 (4th Cir. 1988) ..... 23

*United States v. Bolling*,
No. 2:21-cr-87, 2023 WL 5616188 (S.D. W. Va. 2023) ..... 39

*United States v. Bosyk*,
933 F.3d 319 (4th Cir. 2019) ........ 24, 33
*United States v. Bragg*,
44 F.4th 1067 (8th Cir. 2022) ........ 39
*United States v. Burgard*,
675 F.3d 1029 (7th Cir. 2012) ........ 40
*United States v. Burgess*,
684 F.3d 445 (4th Cir. 2012) ........ 13
*United States v. Byers*,
649 F.3d 197 (4th Cir. 2011) ........ 36
*United States v. Calandra*,
414 U.S. 338 (1974) ........ 16
*United States v. Cephas*,
254 F.3d 488 (4th Cir. 2001) ........ 14
*United States v. Colkley*,
899 F.2d 297 (4th Cir. 1990) ........ 25
*United States v. Dass*,
849 F.2d 414 (9th Cir. 1988) ........ 39
*United States v. Davis*,
690 F.3d 226 (4th Cir. 2012) ........ 13, 17, 20
*United States v. Ebert*,
61 F.4th 394 (4th Cir. 2023) ........ 33
*United States v. Elsheikh*,
103 F.4th 1006 (4th Cir. 2024) ........ 36
*United States v. Evans*,
469 F. Supp. 2d 893 (D. Mont. 2007) ........ 15
*United States v. Franz*,
772 F.3d 134 (3d Cir. 2014) ........ 16, 18
*United States v. Harvey*,
2 F.3d 1318 (3d Cir. 1993) ........ 34
*United States v. Hashime*,
734 F.3d 278 (4th Cir. 2013) ........ 13, 36
*United States v. Janis*,
428 U.S. 433 (1976) ........ 22
*United States v. Johnson*,
865 F. Supp. 2d 702 (D. Md. 2012) ........ 35
*United States v. Khweis*,
971 F.3d 453 (4th Cir. 2020) ........ 36
*United States v. Kowalczk*,
No. 3:08-95, 2012 WL 3201975 (D. Or. 2012) ........ 40
*United States v. Krueger*,
145 F.4th 460 (4th Cir. 2025) ........ 24, 33, 34, 36

*United States v. Laist*,
702 F.3d 608 (11th Cir. 2012) ........ 38, 39, 40
*United States v. Lawson*,
128 F.4th 243 (4th Cir. 2025) ........ 30
*United States v. Lemon*,
590 F.3d 612 (8th Cir. 2010) ........ 35
*United States v. Leon*,
468 U.S. 897 (1984) ........ 16, 20
*United States v. Lockhart*,
947 F.3d 187 (4th Cir. 2020) ........ 30, 31
*United States v. Lough*,
221 F. Supp. 3d 770 (N.D.W. Va. 2016) ........ 20
*United States v. Lowers*,
170 F.4th 134 (4th Cir. 2026) ........ 16, 17
*United States v. Lull*,
824 F.3d 109 (4th Cir. 2016) ........ 26, 36
*United States v. Mays*,
993 F.3d 607 (8th Cir. 2021) ........ 39
*United States v. McCall*,
740 F.2d 1331 (4th Cir. 1984) ........ 33
*United States v. Miller*,
809 F. App'x 131 (4th Cir. 2020) ........ 37
*United States v. Mitchell*,
565 F.3d 1347 (11th Cir. 2009) ........ 38, 39
*United States v. Morales-Aldahondo*,
524 F.3d 115 (1st Cir. 2008) ........ 34
*United States v. Newsom*,
402 F.3d 780 (7th Cir. 2005) ........ 34, 35
*United States v. Olano*,
507 U.S. 725 (1993) ........ 30, 31
*United States v. Perdue*,
110 F.4th 662 (4th Cir. 2024) ........ 30, 31
*United States v. Place*,
462 U.S. 696 (1983) ........ 38
*United States v. Pratt*,
915 F.3d 266 (4th Cir. 2019) ........ 39
*United States v. Pulley*,
987 F.3d 370 (4th Cir. 2021) ........ 25
*United States v. Ramirez-Castillo*,
748 F.3d 205 (4th Cir. 2014) ........ 30, 31
*United States v. Raymonda*,
780 F.3d 105 (2d Cir. 2015) ........ 34

*United States v. Riccio*,
2011 WL 4434855 (S.D. Cal. 2011) ........ 39
*United States v. Richardson*,
607 F.3d 357 (4th Cir. 2010)........ 24, 34, 35
*United States v. Stabile*,
633 F.3d 219 (3d Cir. 2011)........ 40
*United States v. Tate*,
524 F.3d 449 (4th Cir. 2008)........ 25
*United States v. Taylor*,
154 F.3d 675 (7th Cir. 1998)........ 29
*United States v. Vallimont*,
378 F. App'x 972 (11th Cir. 2010) ........ 40
*United States v. Walker*,
No. 5:24-cr-51, 2025 WL 257129 (E.D. Pa. Jan. 21, 2025) ........ 21
*United States v. Watkins*,
111 F.4th 300 (4th Cir. 2024)........ 30
*United States v. Wienke*,
733 F. App'x 65 (4th Cir. 2018) ........ 24
*United States v. Wilhelm*,
80 F.3d 116 (4th Cir. 1996)........ 14
*United States v. Zayyad*,
741 F.3d 452 (4th Cir. 2014)........ 30
*Utah v. Strieff*,
579 U.S. 232 (2016) ........ 17

Statutes

18 U.S.C. § 3231........ 1
28 U.S.C. § 1291........ 1

Rules

Fed. R. Crim. P. 52(b) ........ 30
FRAP 32(a)........ 44

## STATEMENT OF JURISDICTION

This is an appeal from a judgment and commitment order entered by the United States District Court for the Northern District of West Virginia in Clarksburg. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. The district court's judgment was entered on September 23, 2025, and the appellant, Steven David Seeger, timely filed a notice of appeal on September 24, 2025. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. This appeal is from a judgment that disposes of all claims with respect to all parties.

## RESTATEMENT OF THE ISSUES

I. Whether the district court, after holding a two-day evidentiary hearing, properly denied a motion to suppress evidence seized from Seeger's residence because, although it found no warrant existed, the exclusionary rule did not justify suppression of the evidence where the executing officer had drafted an affidavit and sought a warrant from a neutral and detached judge, swore out the documents in front of that judge, and obtained a finding of probable cause but had inadvertently failed to obtain a signed, paper warrant, and had not realized the omission until after the motion to suppress was filed, and at all times acted with the belief that he had properly obtained a warrant authorizing the search?

II. Whether the district court properly denied Seeger's Motion for a *Franks* Hearing where it found that Seeger had failed to make a substantial preliminary showing of falsity or reckless disregard for the truth, because the officer did not omit material information nor include false information and where the omitted material would not have undermined, but strengthened, probable cause?

III. Whether Seeger, having made only a passing reference to staleness and delay before the district court before abandoning the arguments, failed to bear his burden to establish plain error on appeal by failing to argue it in the first instance in his brief and where, even if the Court considered the arguments preserved, the record clearly reflects no error?

## STATEMENT OF THE CASE

On March 22, 2021, Jane Doe 2 ("JD2") – the victim identified in Counts Three, Four, and Five – gave a statement to Corporal Keith Lee of the Nacogdoches Police Department in Texas (where she was living) that Steven Seeger had recently sent nude explicit photographs of her to her boyfriend and had threatened to send them to others, including her college professor. J.A. 68, J.A. 71. JD2 stated that Seeger had done this because she had rejected his advances. She explained that she had been in an online relationship with him beginning when she was 14 years old and Seeger was 34 years of age. J.A. 72. Following the report by JD2, Cpl. Lee reached out to Seeger via telephone telling him to stop sending explicit photos. During the conversation Seeger admitted sending the images of JD2 as "revenge porn" and said he would not stop. Seeger then provided a self-serving explanation for his relationship with JD2, saying the relationship had been very long and confusing, and started online when JD2 claimed to be 18, but when she was actually 14. Seeger falsely claimed that he did not find out her real age until she was 18 and that their on-line relationship had gone on for years. Seeger also admitted to having videos of JD2, but stated he only sent images as revenge porn. J.A. 479.

West Virginia State Police Trooper Thunder Nicholson received a complaint from one of JD2's college professors after the professor received an email from Seeger referencing nude images and revenge porn. J.A. 83. Trp. Nicholson then received a message to return a call received from Cpl. Keith Lee regarding the same incident in Texas. J.A. 84. Cpl. Lee advised Trp. Nicholson of Seeger's dissemination of adult nude images of JD2 to her family and friends and that, in his experience, he felt there was more to the story than what JD2 first disclosed.

J.A. 85. Specifically, Cpl. Lee said JD2 provided a "mix of information" as it related to how old she was when she sent Seeger explicit images. J.A. 86.

On March 29, 2021, Trp. Nicholson contacted JD2 directly about her online relationship with Seeger and learned it had existed from the time she was approximately 14 years old. She stated she did not disclose her actual age to Seeger initially, but that once she told him her actual age, Seeger demanded she send him sexually explicit photographs, which eventually became explicit videos, as a form of "punishment" for lying to him about her age. J.A. 87. JD2 reported their online "relationship" lasted for several years, from age 14 to 17. The statement JD2 provided Trp. Nicholson was consistent with supplemental information she later provided to Cpl. Lee when she returned to advise him that she was not fully truthful with him when she initially reported the "revenge porn." JD2 supplemented her report to Cpl. Lee and added that, from 14 to 17 years of age, she had daily contact with Seeger wherein he directed her to perform sex acts on camera and send the videos and stills to him. J.A. 74. JD2 told Cpl. Lee that she had taken the adult nude images Seeger had recently circulated because Seeger continued to threaten to expose her to everybody if she did not continue to send him pictures. J.A. 75. Cpl. Lee testified at the suppression hearing that victims of sexual misconduct commonly supplement a report with additional details over time. J.A. 78.

Following his telephone interview of JD2, Trp. Nicholson discussed the matter with his detachment commander who advised him to seek a search warrant for Seeger's residence for devices that contain images and videos of a minor engaged in any sexually explicit conduct through the state circuit court, as opposed to its magistrate court system, because circuit court is a court of record. J.A. 88-90. Because Trp. Nicholson had never applied for a search warrant

before the circuit court, his detachment commander provided him with a template to use that was not the auto-populating forms typically used by state magistrates. Ultimately, Trp. Nicholson completed an all-inclusive Affidavit and Complaint for Search Warrant for Seeger's residence, which was identified from the State Department of Motor Vehicles' database. J.A. 90. Trp. Nicholson testified he identified Seeger's residence to search because, in his limited experience, "when people have stuff that they don't want other people to know about or a lot of people would consider taboo and inappropriate, they're not going to hide it somewhere where other people could potentially find it. And then they also like to keep it close on hand. If they have the urge in the middle of the night, they don't want to have to drive far to go get it." J.A. 91.

Trp. Nicholson testified at the suppression hearing that when he set forth his probable cause statement, he did not include information received from Cpl. Lee or JD2's college professor because the information was reported to them by other parties and he spoke directly with the victim. J.A. 91-93. He also did not reference the revenge porn investigation in the affidavit because he was not applying for a search warrant to advance the Texas investigation, which is again why he relied on the statement he received directly from JD2 regarding the West Virginia investigation into her child exploitation. J.A. 91-93. Nicholson included in the affidavit to search the residence that JD2 provided false information to Seeger, which instigated her "payment" to him of sexually explicit videos. J.A. 43, J.A. 93.

Trp. Nicholson submitted the documents to Preston County Circuit Court Judge Steven L. Shaffer. J.A. 93. The template Trp. Nicholson used conformed in every way with the magistrate court's form except that it did not auto-populate a search warrant, which is the

practice in magistrate court. J.A. 88-89. The first and second page of the documents were the affidavit and complaint for search warrant, which detail (1) the offenses alleged, and (2) the things or persons to be searched for (among other things, all storage devices, to include but not limited to cellular phones, laptop computers, standalone computers, and memory cards), and (3) the place, person, or thing to be searched (all residences, attached garages, outbuildings, vehicles, and all other curtilage located at a specified address near Bruceton Mills, West Virginia); (4) a statement on Trp. Nicholson's bona fides; (5) material facts constituting probable cause; (6) whether the object, thing or person searched for constitutes evidence of the commission of such offense; (7) whether the applicant had personal knowledge of the facts and/or relied upon facts provided by another, and (8) lastly, the affirmation by Trp. Nicholson and the certification of the judge that it was subscribed and sworn before him on the 29th day of March 2021. J.A. 38, J.A. 42-43.

Trp. Nicholson testified at the suppression hearing that, after he was sworn and verified the information contained in the Affidavit, Judge Shaffer signed it and told him "it was good, to take it over to his clerk in another office across the hall and they would take care of getting it on record and everything and give me my copies," and when he left the courthouse on March 29, 2021, he believed he had authorization to search Seeger's residence. J.A. 93-94.

After the state case was adopted for federal prosecution, it became clear, particularly during the suppression hearing, that a literal search warrant document may never have been executed. Specifically, after Seeger's motion to suppress was filed asserting there was no warrant to search, the government investigated the whereabouts of the warrant by seeking access to the expunged state criminal case file. J.A. 97, J.A. 135-136. Additionally, Trp.

Nicholson reached out to his old detachment in Kingwood to retrieve the closed file and learned the case file was expunged. J.A. 97. The government reached out to Judge Shaffer via the county prosecuting attorney to learn about his process of issuing search warrants, which was reduced to an affidavit. J.A. 135-149, J.A. 439. The government thereafter believed and asserted in its response to the motion to suppress that the search warrant must have been separated from the affidavit or misfiled. J.A. 439. However, during the suppression hearing, Trp. Nicholson testified that there was no evidence, to his knowledge, that there ever was a warrant that was issued, J.A. 116, and it was his assumption during the process that Judge Shaffer would provide the warrant. J.A. 120. Judge Shaffer testified during the suppression hearing that there was an affidavit upon which his signature was affixed confirming he found probable cause existed for the search of Seeger's residence; but, for reasons, unbeknownst to him, a search warrant was not in the sealed expunged state case file. J.A. 137-140.

Trp. Nicholson testified that, upon receiving the executed documents from the Preston County Clerk – which, at the time, he believed included a warrant to search – he served the documents on Seeger at his residence. J.A. 96. After executing the search, Trp. Nicholson left a completed Property Receipt detailing the seizure of six devices, including two cellular telephones, two external hard drives, a memory card, and a laptop. J.A. 105. None of Seeger's work devices were seized as Trp. Nicholson observed technical information running on the screens and understood Seeger worked for NASA and chose not to seize government property. J.A. 124-125.

On April 19, 2021, a secondary search warrant was obtained for the digital contents of the six items seized on March 29, 2021, which were being held in the WVSP Evidence Room

located within Preston County. J.A. 53-58. On April 26, 2021, Trp. Nicholson hand delivered the devices to Tanner Roney, forensic examiner with the WVSP Digital Forensic Section for forensic analysis who was located on Monongalia County, in West Virginia. J.A. 109-111, J.A. 126-127, J.A. 170. Tanner Roney conducted a digital forensic examination and located sexually explicit images and videos, and chat conversations evidencing solicitation and enticement of several minors for sex, including minors Jane Doe 1 ("JD1") and JD2 (two of the victims ultimately set forth in the federal indictment). The State of West Virginia indicted Steven Seeger with various child exploitation offenses but ultimately dismissed the matter based on an issue related to venue – a number of the offenses occurred outside of Preston County when Defendant was living in Marion County and it was difficult to determine in which location many of the offenses occurred. The United States adopted the investigation and, on July 9, 2024, Seeger was named in a five-count indictment charging him with Coercion and Enticement of a Minor for Sex (Count One); Production of Child Pornography (Count Two); Solicitation of Child Pornography (Count Three); Production of Child Pornography (Count Four); and Possession of Child Pornography (Count Five). J.A. 23-28.

On March 20, 2025, Seeger filed motions challenging the lawfulness of the two searches conducted in an underlying state prosecution. J.A. 29-61. The United States filed its response in opposition to the motions with exhibits, including an affidavit prepared by Circuit Court Judge Shaffer, who found probable cause for the search of Seeger's residence. J.A. 337-372. The United States initially believed there to have been a clerical error that resulted in warrant separated from the affidavit, but after the Court held a full two-day evidentiary hearing, it became clear that there was likely no warrant. J.A. 444-445, J.A. 450. On May 2, 2025, the

district court entered its Sealed Order Denying Defendant's Motions to Suppress. J.A. 438. On May 12, 2025, Seeger entered a conditional guilty plea to Count One and Count Four, preserving his limited ability to appeal the adverse ruling on his motions to suppress. J.A. 211, J.A. 219.

## SUMMARY OF ARGUMENT

The district court did not err in determining that the March 29, 2021, search violated the Fourth Amendment because officers entered Seeger's residence without an issued search warrant and without any recognized exception to the warrant requirement. Although Trp. Nicholson prepared and swore out an Affidavit and Complaint for Search Warrant and Judge Shaffer determined probable cause existed and signed the affidavit and complaint for search warrant, no actual warrant issued authorizing the search. The Fourth Amendment requires more than a probable cause finding alone; it requires issuance of a warrant.

But the district court correctly declined to suppress the evidence seized from the warrantless search. The exclusionary rule is not an automatic remedy for every Fourth Amendment violation. Instead, suppression applies only where its deterrent value outweighs its substantial social costs. Under Supreme Court precedent, exclusion is appropriate when officers engage in deliberate, reckless, grossly negligent, or systemic misconduct. Here, after having held a full suppression hearing, reviewed the record, and considered two days of testimony, the district court found that the constitutional violation resulted from isolated and inadvertent negligence. Trp. Nicholson sought judicial approval, presented a sworn affidavit establishing probable cause, received Judge Shaffer's signed approval on the affidavit, and believed he possessed lawful authority to search and acted consistently with that belief throughout the investigation. Trp. Nicholson simply did not realize that, unlike the warrant template he was used to, the template provided did not automatically generate a warrant page for signature. After hearing testimony and evidence, the district court found "there is nothing in the record to suggest that Trooper Nicholson's conduct in this instance was anything more

than isolated negligence. Rather, the parties only recently discovered there was not a physical search warrant from the March 29, 2021search; Trooper Nicholson believed he followed the proper procedure to obtain a search warrant and Judge Shaffer believed he issued a search warrant. In the present case, there is no deliberate, reckless, or grossly negligent conduct, nor is there evidence of recurring or systematic negligence. J.A. 461. Accordingly, the district court did not err in finding that the remedy of suppression was not appropriate. Because suppression would produce minimal deterrent value while excluding highly probative evidence of serious child-exploitation crimes, the district court properly denied Seeger's motions to suppress.

Second, the district court properly denied Seeger's request for a *Franks* hearing because he failed to make the "substantial preliminary showing" that Trp. Nicholson intentionally or recklessly omitted material information from the affidavit regarding Cpl. Lee's interaction with JD2 during his Texas investigation of revenge porn, while Trp. Nicholson relied on his independent interview and assessment of JD2 in the affidavit. Further, Defendant failed to show that inclusion of the omitted information would have defeated probable cause.

Finally, Seeger's insufficiently preserved remaining challenges –staleness and delay – fail under plain error review or, if the Court found Seeger's passing reference below to be sufficient, under de novo review. During closing arguments in the suppression hearing, after the close of evidence, Seeger's counsel for the first time asserted that JD2's 2021 report of solicitation by Seeger was stale evidence warranting suppression. He further raised for the first time that the secondary warrant to review the contents of the devices should be suppressed because Trp. Nicholson waited twenty days between the search of the residence and his application to search the contents of the items seized. At no point in the briefing did Seeger's

counsel raise these alternative grounds for suppression, and the district court's denial of the suppression motions was silent on those grounds. When a defendant fails to properly raise an argument before the district court, its failure to suppress evidence on that ground is reviewed for plain error. Here, Seeger fails to demonstrate the district court plainly erred and his claim thus fails. For these reasons, this Court should affirm the district court's order denying Seeger's motions to suppress.

## I. The district court properly denied Seeger's Motion to Suppress because the deterrent value of exclusion is minimal where, as the district court found after a two-day evidentiary hearing and testimony by the officer, the officer's conduct was not intentional, but the result of simple negligence and inadvertence.

### A. Standard of Review

In reviewing a district court's suppression rulings, including denial of a *Franks* hearing, this Court reviews factual findings for clear error and the district court's legal determinations de novo. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Burgess*, 684 F.3d 445, 452 (4th Cir. 2012). When a suppression motion has been denied, this Court reviews the evidence in the light most favorable to the government. *United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012); *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013).

### B. Argument

Seeger challenges the denial of his motions to suppress evidence seized as a result of two warrants: the first, of his residence, and the second, of devices seized from his residence. Seeger asserts that the district court erroneously denied both, as the evidence searched under the second warrant was seized during the warrantless search of his residence. Upon review, the district court properly denied Seeger's motion to suppress because the exclusionary rule does not operate to remedy warrantless searches which are the result of, as the district court found after hearing testimony and taking evidence, simple negligence and inadvertence. The district court did not clearly err in finding that Trp. Nicholson sought and believed he had obtained a warrant upon finding of probable cause from a competent judge and that his error was the result of inadvertence or negligence and not gross negligence, malice, or part of a pattern.

### i. The district court did not clearly err when it found there was no warrant.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The right to privacy in one's home is a most important interest protected by the Fourth Amendment." *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996). Indeed, "the very core" of the Fourth Amendment is the right to retreat into one's home "free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961).

Accordingly, warrantless entries into a residence are presumptively unreasonable. *United States v. Cephas*, 254 F.3d 488, 494 (4th Cir. 2001). The Supreme Court of the United States has further held that warrantless seizures are "per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

Here, the United States did not put forth an exception to the warrant requirement because the officer acted at all times believing he had a warrant in hand. Further, the facts did not support that an exception to the warrant requirement applied. Although Trp. Nicholson sought judicial authorization and Judge Shaffer found probable cause, the evidence during the suppression hearing established no actual, literal search warrant was issued. A signed affidavit supporting probable cause is not itself a warrant: "[a] search warrant complaint and affidavit,

even signed by a judge, is not the same as an issued search warrant." J.A. 453; *see United States v. Evans*, 469 F. Supp. 2d 893, 897–98 (D. Mont. 2007) (holding a judge's signature on an affidavit merely indicates the affidavit was sworn before the judge, whereas a warrant authorizes the search itself).

After hearing the testimony from both Trp. Nicholson and Judge Shaffer, the court found that "this is a case with no search warrant—not a missing search warrant." That factual finding is supported by the record and is not clearly erroneous. Because officers entered Seeger's residence without an issued warrant and without any applicable exception to the warrant requirement, the district court did not clearly err when it held that the search violated the Fourth Amendment.

**ii. The district court did not clearly err when it found the violation was the result of isolated, simple negligence and, therefore, application of the exclusionary rule was unwarranted.**

Although the March 29, 2021, warrantless search violated Seeger's Fourth Amendment rights, suppression was not required because the exclusionary rule's deterrent purposes would not be meaningfully advanced by excluding the evidence.

The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Yet, it "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans*, 514 U.S. 1, 10 (1995). To affect this right, the Supreme Court's "decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 140 (2009).

The exclusionary rule is "a prudential doctrine designed to enforce the Fourth Amendment by deterring law enforcement from unreasonable searches and seizures." *United States v. Franz*, 772 F.3d 134, 146 (3d Cir. 2014). But, the Supreme Court has repeatedly emphasized that suppression is not an individual constitutional right and is not automatically triggered by every Fourth Amendment violation, nor is it designed to redress the injury occasioned by its breach. *Davis v. United States*, 564 U.S. 229, 236–37 (2011); *see also United States v. Lowers*, 170 F.4th 134, 157–58 (4th Cir. 2026) ("Importantly, the exclusionary rule is not an individual right, and it is not intended to remedy every Fourth Amendment violation."). "The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). Its "sole purpose" is deterrence of future constitutional violations. *Davis*, 564 U.S. at 236–37. As such, courts conduct a "cost-benefit analysis, balancing the deterrence benefits of suppression against its substantial social costs." *Franz*, 772 F.3d at 146.

As the district court correctly recognized, suppression is appropriate only where police conduct is sufficiently culpable that deterrence is worth the heavy price paid by the justice system. "To trigger the exclusionary rule, police misconduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. The Supreme Court and lower courts distinguish between deliberate or reckless misconduct and "simple, isolated negligence." *Franz*, 772 F.3d at 147; *see also Herring*, 555 U.S. at 144 ("the exclusionary rule serves to

deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence"). When conducting the balancing analysis, "the deterrent effect is higher where the law enforcement conduct is more culpable. Thus, 'an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus of applying the exclusionary rule.'" *Davis*, 690 F.3d at 251 (quoting *Herring*, 555 U.S. at 141). As the Fourth Circuit has recently recognized, "[t]he Supreme Court has, over the years, identified several scenarios where it would make little sense to apply the exclusionary rule because doing so would not deter future police misconduct." *Lowers*, 170 F.4th at 158 (citing *Utah v. Strieff*, 579 U.S. 232, 237 (2016)); *see also Strieff*, 579 U.S. at 238 (independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine).

When officers act with an objectively reasonable good-faith belief that their conduct is lawful, "exclusion cannot pay its way." *Davis*, 564 U.S. at 238. The good faith exception, although it originated in the context of searches and seizures conducted pursuant to later-invalidated warrants, has also been applied to administrative searches performed in reliance in a later-invalidated statute, *Illinois v. Krull*, 480 U.S. 340 (1987), to an arrest made in reliance on erroneous information by a court employee in a database reflecting an outstanding warrant, *Arizona v. Evans*, 514 U.S. 1 (1995), to an arrest made in reliance on a since-recalled arrest warrant, *Herring*, 555 U.S. at 135, and to the fruits of searches "conducted in reasonable reliance on binding precedent." *Davis*, 564 U.S. at 236–37.

In *Herring*, for example, the Supreme Court found that the exclusionary rule did not require suppression of evidence obtained after police in a neighboring county mistakenly told county police that the defendant had an outstanding arrest warrant, despite the fact that said

warrant had been recalled months earlier and had simply never been removed from the electronic database. *Herring*, 555 U.S. at 137–38. There, after the defendant was arrested on the no-longer existent warrant, the arresting officer found contraband. *Id.* The Supreme Court found the exclusionary rule did not warrant suppression of the evidence because the error was the "result of isolated negligence attenuated from the arrest." *Id.* at 137. This is in contrast to the type of intentional, flagrant abuse that gave rise to the exclusionary rule, the very conduct the rule is designed to address.

The Third Circuit has addressed a somewhat similar – albeit not identical – circumstance to that in this case. In *Franz*, officers executed a facially deficient warrant but failed to provide the defendant with an attachment listing the items to be seized. 772 F.3d 134. The Third Circuit held suppression was unwarranted because the officer's mistake stemmed from "inexperience and misunderstanding," not deliberate or reckless misconduct. *Id.* at 149. The Third Circuit stressed that exclusion is justified only where police conduct is sufficiently culpable to merit deterrence. *Id.* at 148–49.

The same principle governs this case: Trp. Nicholson's conduct reflected, at most, isolated negligence or misunderstanding. Like the officer in *Franz*, Trp. Nicholson did not fabricate probable cause, evade judicial oversight, or knowingly conduct a warrantless search. *Id.* Rather, the district court, after a lengthy evidentiary hearing during which he could assess Trp. Nicholson's credibility, found:

- Trp. Nicholson prepared a comprehensive affidavit and complaint for search warrant identifying the crimes under investigation, the place to be searched, and the items to be seized, J.A. 442, J.A. 449;

- Trp. Nicholson personally appeared before Circuit Court Judge Shaffer and swore to the affidavit, J.A. 442, J.A. 445;
- Judge Shaffer found probable cause and signed the affidavit, J.A. 442, J.A. 445, J.A. 449, J.A. 461;
- Judge Shaffer instructed Trp. Nicholson to file the papers with the clerk, J.A. 442, J.A. 446;
- Trp. Nicholson filed the documents with the clerk as instructed, J.A. 442;
- The clerk returned executed documents to Trp. Nicholson, J.A. 442; and,
- Trp. Nicholson mistakenly believed that the executed documents included a valid search warrant, J.A. 441-443, J.A. 461.

The undisputed evidence established that Trp. Nicholson did not conduct a rogue warrantless search. The district court specifically found no evidence that Nicholson knowingly bypassed the warrant requirement or intentionally conducted an unauthorized search. J.A. 461.There was no flagrant or deliberate violation of rights but what is more akin to an error that arises from nonrecurring and attenuated negligence, which the Supreme Court has said is far removed from the core concerns that led to the adoption of the rule in the first place. *Herring*, 555 U.S. at 144.

Even though the court ultimately concluded that no literal, separate warrant existed, the dispositive question under the modern exclusionary-rule doctrine is not whether a technical Fourth Amendment error occurred. The question is whether suppression would meaningfully deter culpable police misconduct. Under these facts, it would not. The officer here did exactly what the Fourth Amendment encourages officers to do: seek judicial approval before

conducting a search. Trp. Nicholson consulted a circuit judge, presented sworn facts establishing probable cause, believed he had obtained a warrant, and relied on the judge's authorization and his belief. Any defect arose from confusion surrounding paperwork—not deliberate police misconduct. Nor was this part of a pattern, but an isolated mistake by an officer attempting to comply with the Fourth Amendment in what he recognized was a very serious case.

Because suppression imposes substantial societal costs by excluding reliable evidence and potentially allowing guilty defendants to escape punishment, the Supreme Court has repeatedly emphasized that exclusion is a "last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Likewise, the Court has been cautious against expanding its application. *Id.*; *see also Colorado v. Connelly*, 479 U.S. 157, 166 (1986). Accordingly, suppression is appropriate only where police conduct is sufficiently culpable that deterrence justifies those substantial heavy costs. *Herring*, 555 U.S. at 141; *Hudson*, 547 U.S. at 591.

The Supreme Court has made clear that exclusion is warranted principally when officers act with deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights. *Davis*, 564 U.S. at 238. Conversely, where officers act with an objectively reasonable belief in legality or engage only in "simple, isolated negligence," the deterrent value of suppression is minimal and exclusion "cannot pay its way." *Id.*; *Herring*, 555 U.S. at 147–48. The Fourth Circuit likewise focuses on the flagrancy and culpability of police conduct in determining whether exclusion is appropriate. *See, e.g.*, *Herring*, 555 U.S. at 141; *Leon*, 468 U.S. 897; *Davis*, 690 F.3d at 251; *United States v. Lough*, 221 F. Supp. 3d 770, 782 (N.D.W. Va. 2016), *aff'd*, 721 F. App'x 291 (4th Cir. 2018).

In *Illinois v. Krull*, the Supreme Court held that the exclusionary rule does not apply where officers act in objectively reasonable reliance on legal authority later determined to be defective. 480 U.S. 340 (1987). The Court emphasized that the exclusionary rule's "prime purpose" is deterrence of future unlawful police conduct and that suppression is inappropriate where officers are simply fulfilling their responsibility under apparently valid authority. The same logic applies here: Trp. Nicholson sought and obtained judicial authorization from a circuit judge. Even assuming the warrant paperwork was technically deficient, Trp. Nicholson reasonably relied on the judge's approval and the clerk's return of executed documents. Suppression would therefore provide little deterrent value.

The district court carefully applied these governing principles and correctly determined that suppression was unwarranted because Trp. Nicholson's conduct reflected only isolated negligence rather than deliberate or systemic misconduct. The evidence established, as the district court found, that Trp. Nicholson attempted to comply with constitutional procedures, believed he had a valid warrant, and believed he was authorized to search Seeger's residence. Consistent with that belief, Trp. Nicholson informed Seeger that he possessed a warrant, executed a property receipt, and treated the search as judicially authorized throughout the investigation, even filing a return with the court within ten days.

Nothing in the record suggests intentional circumvention of the warrant requirement. Nor is there evidence that Trp. Nicholson knowingly proceeded without judicial authorization, acted recklessly, or engaged in recurring unconstitutional practices. The district court appropriately analogized this case to *United States v. Walker*, No. 5:24-cr-51, 2025 WL 257129, at *1 (E.D. Pa. Jan. 21, 2025), where officers conducted an unconstitutional

warrantless entry based upon a mistaken understanding of judicial authorization, yet suppression was denied because the conduct amounted only to isolated negligence. Likewise, here, the constitutional violation stemmed from an inadvertent procedural breakdown after a judicial probable cause determination had already been made. The failure was not deliberate; it was an isolated mistake arising from confusion regarding preparation and issuance of the formal warrant document in circuit court. Under *Herring* and *Davis*, such isolated negligence does not justify the "heavy toll" imposed by suppression. *Herring*, 555 U.S. at 147; *Davis*, 564 U.S. at 236–37.

The district court also correctly determined that exclusion would provide little meaningful deterrence. The central purpose of the exclusionary rule is to deter future police misconduct. *Davis*, 564 U.S. at 236–37. But deterrence is weak where, as here, officers already attempted to comply with constitutional requirements and where the violation resulted from a singular administrative or procedural mistake. Here, Trp. Nicholson sought judicial involvement before the search, obtained a probable cause determination from a circuit judge, and believed he had proper authorization to proceed. Excluding evidence under these circumstances would not deter future misconduct because there is no evidence of systemic disregard for constitutional protections.

By contrast, the societal costs of suppression would be severe. The Supreme Court has repeatedly emphasized that exclusion imposes grave social costs because it suppresses reliable evidence and may permit dangerous offenders to escape accountability. *See generally Hudson*, 547 U.S. at 587; *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364 (1998); *United States v. Janis*, 428 U.S. 433, 448 (1976). Those concerns are especially acute here. The

search uncovered evidence relating to the exploitation of minors, including communications soliciting sexually explicit material from minors and digital evidence corroborating JD2's statements. Seeger himself admitted during the interview that preceded the search of his home that he sent nude photographs of JD2 and received explicit images from her while she was underage. Suppressing this evidence would not meaningfully deter future misconduct because the officer already attempted to comply with constitutional procedures by presenting the evidence to a neutral judge. The only likely effect of suppression would be to exclude highly probative evidence despite the absence of deliberate wrongdoing. The exclusionary rule does not require such a result. *See Herring*, 555 U.S. at 141.

The district court therefore properly balanced the minimal deterrent benefits against the significant societal costs and correctly concluded that suppression was unwarranted.

**iii. The district court did not clearly err when it found the search warrant affidavit possessed the necessary nexus between Seeger and the address to be searched.**

The search of Seeger's residence for images and videos of child exploitation was adequately supported by probable cause, even though the affidavit used to apply for a warrant contained no facts that the contraband was specifically located in defendant's residence because it was reasonable for Judge Shaffer to believe that contraband child sexual exploitation materials would be found in Seeger's residence. Here, the warrant application and affidavit presented evidence that Seeger had solicited sexually explicit images and videos of a minor electronically, that he had sent sexually explicit images of the victim to her friends and family, and that it is common for people to save such images or digitally record such incidents. *See United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (agreeing with

the Fifth, Sixth, Eighth, and Ninth Circuits "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence"). When reviewing for probable cause, the district court examined whether the items to be seized are evidence of criminal activity and whether it was reasonable to believe the items would be found in Seeger's residence by reviewing the totality of the circumstances. *United States v. Wienke*, 733 F. App'x 65, 69 (4th Cir. 2018). Officers may draw on their experiences, judgments, and observations when identifying the place to be searched, and judges may draw on reasonable inferences from the facts stated by an affiant when the facts do not specifically link the items to the place to be searched, when reviewing for probable cause. In *Wienke*, this Court found "it is reasonable ... to assume that a person keeps his possessions where he resides." *Id.* (quoting *Peffer v. Stephens*, 880 F.3d 256, 270 (6th Cir. 2018)).

This Court has also recognized "that collectors of child sexual abuse material value that material highly, so rarely dispose of it and instead "store it for long periods in a secure place, typically in their homes.'" *United States v. Krueger*, 145 F.4th 460, 465 (4th Cir. 2025) (quoting *United States v. Bosyk*, 933 F.3d 319, 331 (4th Cir. 2019)). Second, there is the fact that digital media files persist for a long time, and that even if a defendant deletes a file from a hard drive or other computer media, a computer expert is still likely to retrieve it through scientific examination of the computer." *Id.* at 465 (quoting *United States v. Richardson*, 607 F.3d 357, 371 (4th Cir. 2010)).

The district court properly found there was a sufficient nexus between the items to be searched and Seeger's residence because "[i]t is logical to assume that such contraband would

be concealed in one's home or that an individual's personal computer or electronic devices would be kept there." J.A. 438. Accordingly, Seeger's argument in this regard fails, and this Court should affirm the district court's denial of Seeger's motions to suppress the warrants.

## I. The district court properly denied Seeger's Motion for *Franks* Hearing because Seeger failed to make a substantial preliminary showing of falsehood or reckless disregard for the truth.

### A. Standard of Review.

This Court reviews "de novo the legal determinations underlying a district court's suppression rulings, including the denial of a *Franks* hearing, and . . . review[s] the court's factual findings relating to such rulings for clear error." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011); *see also United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008). "[A] district court's finding of whether a particular false statement or omission in a warrant affidavit was made intentionally or with reckless disregard for the truth is a factual one, subject to reversal only upon an appellate finding of clear error." *United States v. Pulley*, 987 F.3d 370, 377–78 (4th Cir. 2021). "A determination of probable cause is an issue of law that is reviewed de novo." *Allen*, 631 F.3d at 171.

### B. Argument.

To be entitled to suppression pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant must make what this Court has called a "dual showing." *See United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Under the first prong, the "intentionality" prong, a defendant must show that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56. Under the second prong, the "materiality" prong, a defendant must show that "with the

affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 156.

In Seeger's motion to suppress he argued a *Franks* hearing was warranted because Trp. Nicholson failed to disclose "credibility issues involving JD2" to the issuing judge. Specifically, Seeger argued that Trp. Nicholson omitted information he received from Cpl. Lee concerning JD2's credibility that was included in his criminal complaint – that she provided a mix of information that was at times inaccurate and the victim would recant. He argued the issuing judge was entitled to this information in assessing the veracity of the chief complainant. *United States v. Lull*, 824 F.3d 109, 116 (4th Cir. 2016). However, Seeger's focus on a brief passage in the criminal investigation report misrepresented the facts available to Trp. Nicholson at the time he drafted the affidavit for probable cause. The district court properly denied Seeger's request for a *Franks* hearing because Seeger failed to make the "substantial preliminary showing" required under *Franks v. Delaware*. The court correctly recognized the strong presumption of validity afforded to affidavits supporting search warrants and found that Seeger failed to establish that Trp. Nicholson intentionally or even recklessly omitted material information from the affidavit.

First, the district court did not err in determining that Seeger had failed to establish that Trp. Nicholson intentionally or even recklessly omitted material information from the affidavit. The record from the hearing establishes that Trp. Nicholson included the evidence material to the West Virginia child exploitation investigation, included JD2's statement that she had initially lied to Seeger about her age, and did not intentionally or recklessly omit Cpl. Lee's impression, based on his training and experience, that JD2 was not being fully honest regarding

when her relationship with Seeger began and when she sent him explicit images. This is particularly true given that the inclusion of Cpl. Lee's belief, based on his training and experience, would have only strengthened the probable cause in the affidavit.

This investigation began in 2021 when JD2 reported to Texas authorities that Seeger was sending nude explicit images of her to her friends and family as "revenge porn," and that their online relationship began when she was 14 years old. Cpl. Lee then further inquired if she had ever sent Seeger images when as a minor, which she denied. Her denial was false. When Cpl. Lee testified at the suppression hearing, he confirmed he did not feel like "[s]he was being totally truthful with me that first day she came in." J.A. 72-73. Trp. Nicholson testified that Cpl. Lee advised him that his impression regarding the mix of information was tied specifically to what age JD2 was when she started communicating with Seeger and at what point sexually explicit pictures were sent. J.A. 87. In his testimony, Trp. Nicholson added that Cpl. Lee advised he felt there was "more to the story" than what JD2 initially reported and that, in his experience working with sexual offenders and after reading her body language, he believed JD2 was not completely honest about when their relationship started and about whether she sent him pictures while she was a minor. J.A. 85. In sum, Cpl. Lee conveyed his impressions of JD2 to Trp. Nicholson, but those impressions of JD2 did not relate to her credibility as a witness overall, but to whether she had fully disclosed the extent of her exploitation, something Cpl. Lee knew, in his training and experience, is not uncommon amongst victims of sexual exploitation.

Cpl. Lee testified at the suppression hearing and confirmed he spoke to Trp. Nicholson about JD2's report. While on the stand, Cpl. Lee did not recall what they discussed specifically

or whether he gave him examples of any inconsistencies in JD2's reporting, it was Cpl. Lee's intuition that caused him to have doubts regarding whether JD2 was really over eighteen when she sent Seeger images and videos. J.A. 72-73. He was right.

Based upon the report received from both Cpl. Lee and his communications with JD2's college professor, Trp. Nicholson then interviewed the victim himself. He later testified at the suppression hearing that when he drafted the probable cause statement, he chose to rely on information JD2 provided to him in his interview because she "gave me a bit more information about the relationship that she had with Mr. Seeger. She had advised me that the relationship had started when she was approximately 14 years old, but she was not honest with Mr. Seeger in regards to her age … She advised me that once she had revealed to Mr. Seeger what her actual age was, as a form of punishment he had started requesting sexually explicit photos, that eventually migrated into videos, and that this relationship had gone on for several years …" J.A. 87. Trp. Nicholson's reliance on his interview of the victim and his own credibility assessment was more than sufficient to establish probable cause. Trp. Nicholson's decision to exclude Cpl. Lee's credibility assessment of JD2 was likely more beneficial to Seeger given it would have provided further concern Seeger may be in possession of images and videos of JD2 as a minor. Additionally, the fact that a victim of child exploitation may provide inconsistent reporting regarding the full nature and extent of her exploitation does not belie her credibility. Regardless, the affidavit did include that JD2 provided Seeger false information about her age, which was information available to Judge Shaffer when he found probable cause. J.A. 43, J.A. 93.

The district court properly concluded that Trp. Nicholson's decision to omit information provided by Cpl. Lee did not warrant a *Franks* hearing. First, Cpl. Lee was investigating Seeger for sending of revenge porn to JD2's family and friends in Texas while Trp. Nicholson was investigating allegations that Seeger solicited sexually explicit images and videos of JD2 when she was a minor – crimes alleged to have occurred in West Virginia. There was no evidence of deliberate falsehood or reckless disregard for the truth, as Trp. Nicholson reasonably focused on information directly relevant to the offenses under investigation in West Virginia, and as noted by Cpl. Lee, it was not uncommon for victims of sex crimes to supplement or revise their reports. J.A. 43. Also, Trp. Nicholson included within his probable cause statement that JD2 reported she provided Seeger false information. J.A. 73.

Finally, Seeger failed to demonstrate that inclusion of the omitted information (that Cpl. Lee's intuition told him JD2 was not being completely honest about her age and his belief that she likely sent Seeger images and videos of herself while she was a minor) would have defeated probable cause. In fact, Cpl. Lee's belief, based in part on his training and experience working on sexual offenses, likely would have strengthened probable cause in the affidavit. Accordingly, the district court correctly denied the request for a *Franks* hearing.

But, even if the district court did err in concluding Seeger had failed to establish his entitlement to a *Franks* hearing, any error was harmless because an evidentiary hearing was held during which Seeger was able to cross-examine Trp. Nicholson and Cpl. Lee on the pertinent matters. Even with this opportunity – effectively, a pre-*Franks* hearing – Seeger was unable to meet his burden of making a substantial preliminary showing of an intentional or reckless material falsehood in the affidavit. *See United States v. Taylor*, 154 F.3d 675, 680

(7th Cir. 1998) (noting that in "an excess of caution" district court held an evidentiary hearing to enable defendant to develop his *Franks* argument, treating hearing as one to determine whether the preliminary showing could be met). Here, Seeger failed to meet his burden even with the benefit of a hearing in advance of a *Franks* hearing.

## III. Seeger's insufficiently preserved remaining challenges to the warrants – staleness and delay – fail under plain error or de novo review.

### A. Standard of Review.

Errors not noticed below are reviewed for plain error. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). "To preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal." *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014); *see also United States v. Watkins*, 111 F.4th 300, 311 (4th Cir. 2024) (where defendant objected to evidence on relevancy grounds below, argument on appeal as to character evidence and hearsay are forfeit and subject to plain error); *United States v. Lawson*, 128 F.4th 243, 254 (4th Cir. 2025) (objection to loss calculation on one ground below did not preserve different objection to loss calculation on appeal).

"Under this standard, a defendant carries the burden to show '(1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights.'" *United States v. Perdue*, 110 F.4th 662, 668 (4th Cir. 2024) (quoting *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020). "Because 'Rule 52(b) is permissive, not mandatory,' even after the above three-part showing has been made, the decision to correct the error remains within [the Court's] discretion." *United States v. Ramirez-Castillo*, 748 F.3d 205, 212 (4th Cir. 2014) (quoting *United States v. Olano*, 507 U.S. 725, 735 (1993)). The Court will only exercise its remedial

discretion to correct the error if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (cleaned up).

"To be 'plain,' an error must be 'clear' or 'obvious' . . . 'at the time of appellate consideration.'" *Ramirez-Castillo*, 748 F.3d at 215 (quoting *Olano*, 507 U.S. at 734; *Henderson v. United States*, 568 U.S. 266, 279 (2013)). "An error is clear or obvious 'if the settled law of the Supreme Court or this circuit establishes that an error has occurred." *Ramirez-Castillo*, 748 F.3d at 215.

"To satisfy [the] third condition, the defendant ordinarily must show 'a reasonable probability that, but for the error, the outcome of the proceedings would have been different.'" *Perdue*, 110 F.4th at 668 (quoting *Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018) (cleaned up)). The Court has "the discretion to correct such an error but will do so only when the error 'seriously affects the fairness, integrity or public reputation of the judicial proceedings.'" *Id.* (quoting *Lockhart*, 947 F.3d at 191).

**B. Argument.**

During closing arguments at the suppression hearing, after the close of evidence, Seeger's counsel for the first time noted that JD2's 2021 report of solicitation by Seeger was stale evidence warranting suppression. He further raised for the first time that the secondary warrant for the review of the contents of the devices seized should be suppressed because Trp. Nicholson delayed twenty days between the search of the residence and his application to search the contents of the items seized.

At no point in the briefing did Seeger's counsel raise these alternative grounds for suppression, and the district court's denial of the suppression motions was silent on those

grounds. When a defendant fails to raise an argument before the district court, they fail to put the district court on notice regarding the matter, and its failure to suppress evidence on that particular ground is reviewed for plain error. Here, Seeger's brief references to staleness and delay failed to put the district court on notice and now, on appeal, Seeger fails to demonstrate that the district court plainly erred.

**i. Seeger's staleness argument fails.**

Seeger's counsel raised an issue of staleness of the evidence to defeat probable cause in the affidavit at the final hour, after the close of evidence, when he argued, "[i]t's also true in this particular case that the warrant information is stale." J.A. 167-168. Seeger's briefing was silent on the issue, and there was no indication it was being argued as an alternative theory upon which to suppress the evidence and no record below was developed and Defendant failed to adequately preserve his claim.

What is apparent from the facts supporting probable cause is that, on March 29, 2021, JD2 reported she was in a non-intimate long-distance relationship with Seeger while she was a minor and that she sent sexually explicit photographs and videos electronically to him. She stated Seeger was aware of her age when he solicited the images and videos, and that he in fact solicited videos as a form of punishment when JD2 gave him false information. Trp. Nicholson included the fact that Seeger has sent sexually explicit images of JD2 to her friends and family and that it is common for people to save such photos or digitally record such incidents. So, what is clear from the probable cause statement is that JD2 made her report of being sexually exploited by Seeger on March 29, 2021, and the application for search warrant was sworn out by Trp. Nicholson the same day.

Probable cause is time-specific, and facts said to support probable cause must "justify a finding of probable cause at th[e] time" a warrant issues. *See United States v. Ebert*, 61 F.4th 394, 401 (4th Cir. 2023) (quoting *United States v. McCall*, 740 F.2d 1331, 1335–36 (4th Cir. 1984)). As this Court set forth in *Krueger*, "when it comes to child sexual abuse material, as the district court recognized, the consensus among courts, including ours, is that "even a substantial delay" between suspect online activity and the issuance of a search warrant "doesn't render the underlying information stale." *Krueger*, 145 F.4th at 465 (quoting *Bosyk*, 933 F.3d at 330–31). Indeed, courts evaluating warrants in such cases "have sustained warrants issued many months, and even years, after the events that gave rise to probable cause." *Bosyk*, 933 F.3d at 331. *Krueger* involved a complicated state investigation, adopted for federal prosecution, whereafter the defendant challenged both the staleness of the facts to find probable cause and the delay in getting a secondary warrant. *Krueger*, 145 F.4th at 465. Regarding the issue of staleness, *Krueger* highlights two pervasive themes present in the instant case, the concept of the collector inference and the nature and stability of electronic evidence. *Id.*

The collector inference is "the 'widespread view' that collectors of child sexual abuse material value that material highly, so rarely dispose of it and instead 'store it for long periods in a secure place, typically in their homes.'" *Id.* (quoting *Richardson*, 607 F.3d at 371). Here, Trp. Nicholson included in his affidavit, "[t]hat [it] is not uncommon for people to save photos or digitally record such incidents." J.A. 43. Further, JD2's characterization that Seeger "proceeded to continue requesting photographs and videos of sexually explicit actions" establishes a pattern of continuing activity, not a one-time occurrence, which mitigates the

significance of the passage of time between the last alleged event and the warrant application. *See United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015).

Seeger argues that there was no reason to believe he would have still maintained such images and even the victim noted she did not know whether he still possessed her images and videos. Like the Court found in *Krueger*, there is a reason to believe Seeger was interested in images of child pornography having routinely requested such images and videos from a person he knew to be a minor, as opposed to the "hypothetical inadvertent stumbler." *Krueger*, at 465. J.A. 43. In the context of child pornography cases, courts have largely concluded that a delay, even a substantial delay, between distribution and the issuance of a search warrant does not render the underlying information stale. *See, e.g.*, *Richardson*, 607 F.3d at 370 (concluding that lapse of four months did not render probable cause to search for child pornography "stale"); *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) ("Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned."); *United States v. Harvey*, 2 F.3d 1318, 1323 (3d Cir. 1993) (concluding that delay of two to fifteen months does not render information stale); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (holding that three-year delay between acquisition of child pornography and application for warrant did not render supporting information stale since "customers of child pornography sites do not quickly dispose of their cache); *Krueger*, 145 F.4th 460 (holding federal law enforcement officers' application for search warrant roughly three years after devices were seized by state police pursuant to warrant issued by state magistrate judge was not unreasonable under Fourth Amendment).

Given the manner in which electronic evidence is stored, there is every reason to believe that even after several years evidence will be preserved. "[T]here is the fact that digital media files persist for a long time" and that even if a defendant deletes a file "from a hard drive or other computer media, a computer expert is still likely to retrieve ... [it] through scientific examination of the computer." *Richardson*, 607 F.3d at 371 (internal quotation marks omitted). This ability to recover files even deleted files impacts a court's analysis of the staleness of the probable cause supporting a search warrant. Courts routinely recognize the longevity of information stored on computers. *See, e.g.*, *United States v. Lemon*, 590 F.3d 612, 615–16 (8th Cir. 2010); *Newsom*, 402 F.3d at 783; *United States v. Johnson*, 865 F. Supp. 2d 702, 707 (D. Md. 2012) (because evidence on a computer is recoverable months or years after it has been downloaded, deleted, or viewed, "the age of the information supporting a warrant is increasingly irrelevant when the object searched is stored on a computer").

There was, therefore, reasonable cause to believe evidence of the crime would be recovered, and was recovered, from Seeger's devices. Regarding the argument that Seeger was deprived of his possessory interest in even his work computer and phone, officers did not seize those devices after having observed highly technical images indicating the devices were owned by NASA. J.A. 125. Accordingly, Seeger's brief allusions after the close of evidence at the suppression hearing to the possible staleness of the evidence did not provide adequate notice to the court of his additional theory for suppression thus failing to preserve it for review, and his arguments now do not show plain error, as it is not clear and obvious that the evidence upon which the probable cause was established was stale such that denial of the suppression motion was plainly erroneous. Therefore, the district court properly concluded probable cause existed

because the information provided on the Affidavit and Complaint for Search Warrant was not stale.

Assuming arguendo, the Court believes Seeger made a sufficient objection by mentioning staleness in his arguments after the close of evidence to preserve the issue on appeal, even under *de novo* review, his claim fails. "When reviewing the denial of a motion to suppress, [the Court] review[s] the factual findings for clear error and the district court's legal determinations de novo." *United States v. Elsheikh*, 103 F.4th 1006, 1013 (4th Cir. 2024) (quoting *United States v. Khweis*, 971 F.3d 453, 459 (4th Cir. 2020) (cleaned up)); see also *United States v. Lull*, 824 F.3d 109, 114–15 (4th Cir. 2016) (review of denial on motion to suppress raising Franks issue); *United States v. Byers*, 649 F.3d 197, 214 (4th Cir. 2011) (review of denial of motion to suppress on involuntariness grounds). "A determination of probable cause is an issue of law that is reviewed de novo." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). "When a suppression motion has been denied, this Court reviews the evidence in the light most favorable to the government." *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013).

Here, the Court heard evidence over 2 days and denied Seeger's motions to suppress. As argued above and detailed in *Krueger*, individuals who collect child sexual abuse material are understood to value such material, and as Trp. Nicholson noted in his affidavit and testified during suppression hearing, "it is not uncommon for people to save photos or digitally record such incidents." J.A. 43. *Krueger*, 145 F.4th at 465. Further, electronic data is the nature and type of evidence like to be preserved and maintained for extended periods of time, even years. Reviewing the evidence in the light most favorable to the Government, the district court's determination of probable cause was proper even under *de novo* review.

#### ii. Seeger's delay argument fails.

Again, Defendant's counsel raised at the final hour an issue of a twenty-day delay between the search of the residence on March 29, 2021, and the application for secondary warrant to view contents seized on April 19, 2021, when added, "[T]he information search was delayed. The digital search was delayed. We believe that's a problem. My client was entitled to get his data back if it wasn't properly seized and to do that promptly. And the delay in executing that – the digital search was a problem." J.A. 170. Seeger's briefing was silent on the issue and when a defendant fails to properly raise an argument before the district court and the district court is silent on the issue, it is reviewed only for plain error. *See United States v. Miller*, 809 F. App'x 131, 137 (4th Cir. 2020) (unpublished).

After defense counsel raised his claim of delay, the district court inquired of counsel "how does [a twenty-day delay] rise to the level that requires this Court to exercise its authority to provide a remedy under the Fourth Amendment?" Counsel's answer was merely, "We think that the withholding of that information is a – it's an independent Fourth Amendment violation, Judge," which was the sum and substance of his argument before he abandoned it further. J.A. 171. Because the matter was not raised in the motion to suppress or otherwise developed, the record was not developed below, and the district court was not on notice of this issue. Nevertheless, a 21-day delay in getting a secondary warrant to review the contents of Seeger's seized devices was reasonable. Accordingly, regardless of whether this Court applies plain error or reviews de novo, Seeger's claim fails.

There is no bright line past which a delay becomes unreasonable. Instead, the Supreme Court requires courts to assess the reasonableness of a seizure by weighing "the nature and

quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983); *Illinois v. McArthur*, 531 U.S. 326, 331 (2001) (instructing courts to "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable"). Here, Trp. Nicholson seized six electronic devices from Seeger on March 29, 2021, devices that even Seeger acknowledged, and was captured on the body warn camera of Trp. Nicholson. A secondary warrant was sworn out on April 19, 2021, twenty-one days later. J.A. 53-57. Seeger failed to raise the issue of delay in either of his Motions to Suppress, particularly the motion challenging the secondary warrant. J.A. 47-52. Challenges in the second warrant were limited to denial of a *Franks* hearing on the credibility of JD2, addressed herein, and overbreadth in the description of the items to be seized.

The Supreme Court has held that after seizing an item, police must obtain a search warrant within a reasonable amount of time because a seizure reasonable at its inception may become unreasonable as a result of its duration. *See Segura v. United States*, 468 U.S. 796, 812 (1984) (officer's delay in getting a warrant because they were processing the crime scene was reasonable). Under the Fourth Amendment, the proper inquiry is not whether some delay occurred, but whether the delay was unreasonable under the totality of the circumstances. *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012) (holding that delay of twenty-three to twenty-five days is reasonable under the circumstances); *see United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009) (the reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis reflecting a careful balancing of governmental and private interests).

Courts must evaluate delay claims in a fact-intensive manner, balancing the defendant's possessory interests against legitimate governmental interests and law-enforcement diligence. *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) (a thirty-one day delay in obtaining search warrant for the contents of defendant's cell phone unreasonable where defendant did not consent to the seizure so his possessory interest was not diminished, and government's delay was deciding in which state it should seek the warrant as opposed to reduced resources or that government otherwise exercised due diligence during delay). Relevant considerations include the length of delay, the significance of the possessory intrusion, whether the defendant sought return of the devices, the complexity of the investigation, and whether officers acted diligently. *Laist*, 702 F.3d at 613; *United States v. Bolling*, No. 2:21-cr-87, 2023 WL 5616188, at *1 (S.D. W. Va. 2023) (quoting *United States v. Bragg*, 44 F.4th 1067, 1072 (8th Cir. 2022); *United States v. Mays*, 993 F.3d 607, 617 (8th Cir. 2021) (delays upheld where possessory interest was diminished by defendants' arrests)).

Here, Seeger failed to establish the kind of unjustified governmental inactivity present in many cases where delay is determined unreasonable. In *Mitchell*, the Eleventh Circuit found a twenty-one-day delay unreasonable where the agent effectively abandoned the warrant process while attending a training program and "did nothing" to seek judicial authorization during the delay. 565 F.3d 1347. Likewise, in *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), the government delayed between seven and twenty-three days in seeking warrants for seized packages despite having probable cause and offered insufficient justification for the delays. In *United States v. Riccio*, 2011 WL 4434855, at *1 (S.D. Cal. 2011), the government delayed approximately ninety-one days, which was found to be unreasonable. Those cases

involved either extreme delays or affirmative evidence demonstrating a lack of diligence by the officers.

By contrast, courts routinely uphold comparable or longer delays where the government acted reasonably and the defendant failed to demonstrate meaningful prejudice or possessory deprivation. In *United States v. Vallimont*, the Eleventh Circuit upheld a forty-five day delay in obtaining a warrant to search a computer because investigators faced competing investigative demands, limited resources, and continued working on the case during the interim. 378 F. App'x 972, 975 (11th Cir. 2010). The court emphasized that the reasonableness inquiry depends on all surrounding circumstances and recognized that competing law-enforcement obligations may justify delay. Similarly, in *Laist*, the Eleventh Circuit held that a twenty-five day delay was reasonable because investigators diligently prepared a detailed warrant application and the defendant's possessory interests were diminished by the circumstances. 702 F.3d at 616. The court specifically rejected any per se timeline and stressed that courts must consider investigative complexity and practical realities confronting officers. Other circuits likewise support affirmance. *See United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012) (a six-day delay was held reasonable because officers acted diligently and the defendant never requested the return of the phone); *United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011) (a three-month delay was upheld in part because the defendant did not seek return of the hard drives for eighteen months, substantially diminishing any possessory-interest claim); *United States v. Kowalczk*, No. 3:08-95, 2012 WL 3201975, at *1 (D. Or. 2012) (a seven-day delay was deemed reasonable after the court considered practical realities such as holidays, investigator scheduling, and the diminished possessory interest of a defendant already in custody).

When considerations of very specific facts are necessary to make determinations as to reasonableness it is important to develop the record. During his cross examination of Trp. Nicholson, Seeger's counsel made no inquiry into any delay between seizure and the secondary warrant, failing to meaningfully develop the factual record necessary to litigate a delay-based suppression claim. As part of the background, Trp. Nicholson did testify that at the time he was assigned to the Kingwood Detachment to investigate all manner of crimes (including Seeger's) there were only eight troopers assigned to his detachment. J.A. 82. There was no inquiry by Seeger as to when investigators began preparing the secondary warrant, what investigative steps occurred during the interim, whether forensic or administrative backlogs existed, whether competing investigative obligations delayed review, or whether Seeger requested return of the devices. Nor did Seeger's counsel develop evidence demonstrating any concrete prejudice from the delay or any substantial interference with his possessory interests. Officers did, however, leave Seeger's work computers and work phone because he expressed possessory interest - needing them and there was concern they belonged to NASA, and Seeger further advised the officers that the devices seized were old, which was discussed during the search and captured on Trp. Nicholson's body worn camera. The failure to even attempt to develop these answers matters because delay claims are inherently fact specific. As *Laist* explained, courts cannot determine reasonableness in the abstract; the inquiry depends on the detailed circumstances surrounding the seizure and investigation. Here, the district court committed no plain error in declining to make extensive findings on an issue Seeger himself failed to meaningfully develop, and which itself was not clearly or obviously erroneous. Moreover, Seeger's failure to adequately preserve the issue below limits appellate review. A defendant cannot raise

generalized objections and later fault the district court for failing to resolve undeveloped factual disputes. Where the record lacks evidence showing deliberate delay, lack of diligence, or meaningful possessory harm, the district court is entitled to reject suppression arguments grounded largely in speculation.

Accordingly, under the fact-intensive reasonableness framework recognized by the Fourth Circuit and persuasive federal authority, the district court properly rejected Seeger's delay-based suppression argument as an independent Fourth Amendment violation. The record here does not establish the sort of unexplained or unjustified delay condemned in *Mitchell*, *Dass*, *Gregoire*, or *Riccio*. Instead, this case aligns more closely with *Laist*, *Vallimont*, *Stabile*, *Burgard*, and *Kowalczk*, where courts upheld delays because the circumstances demonstrated reasonable investigative conduct and diminished possessory concerns. Seeger's failure to adequately object and develop the factual record below provides an additional and independent basis to affirm the district court's decision declining to suppress evidence based on the 21-day delay between the seizure of Seeger's electronic devices and the later warrant authorizing review of their contents.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court. Since the issues on appeal concern straightforward legal principles and uncomplicated facts that are adequately presented in the parties' briefs, the United States respectfully suggests that oral argument is not necessary in this case.

Respectfully submitted,

MATTHEW L. HARVEY
United States Attorney

/s/ Kimberley D. Crockett

Kimberley D. Crockett
WVSB 9335
Assistant United States Attorney
217 W. King Street
Martinsburg, WV 25401

CERTIFICATE OF COMPLIANCE

This brief complies with FRAP 32(a) as follows:

1. This brief has been prepared using Microsoft Word 2016, proportional typeface New Times Roman, 13 point.

2. EXCLUSIVE of the cover page; disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificate of service, the brief contains 11,702 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

Date: October 21, 2026

/s/ Kimberley D. Crockett

Kimberley D. Crockett
WVSB 9335
Assistant United States Attorney
217 W. King Street
Martinsburg, WV 25401

CERTIFICATE OF SERVICE

I, Kimberley D. Crockett, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that the foregoing APPELLEE'S BRIEF was served upon the following:

Elizabeth Franklin-Best
3710 Landmark Drive, Suite 113
Columbia, SC 29204
*Counsel for Appellant*

Martin P. Sheehan, Esq.
1140 Main Street, Suite 333
Wheeling, WV 26003
*Counsel for Appellant*

By electronic controlled filing on this 21st day of October 2026.

Respectfully submitted,

MATTHEW L. HARVEY
United States Attorney

/s/ Kimberley D. Crockett
Kimberley D. Crockett
WVSB 9335
Assistant United States Attorney
217 W. King Street
Martinsburg, WV 25401