**No. 25-4526**

*In The*

# United States Court of Appeals
**For The Fourth Circuit**

**UNITED STATES OF AMERICA,**
*Plaintiff – Appellee,*

v.

**STEVEN DAVID SEEGER,**
*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT CLARKSBURG

## REPLY BRIEF OF APPELLANT

Elizabeth Franklin-Best
Elizabeth Franklin-Best, P.C.
3710 Landmark Drive, Suite 113
Columbia, South Carolina 29204
(803) 445-1334

Martin P. Sheehan
Sheehan & Associates, P.L.L.C.
1140 Main Street, Suite 333
Wheeling, West Virginia 26003
(304) 232-1064

*Counsel for Appellant*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. The Government Cannot Keep the Fruits of a Warrantless Home Entry by Calling the Trooper's Failure "Negligent." ..... 3

A. Whether the trooper's conduct warrants exclusion is a legal question that this Court reviews de novo. ..... 3

B. A reasonably well-trained officer would have known that he could not search a home without a warrant. ..... 4

C. This case does not involve the "isolated negligence attenuated from the arrest" that *Herring* excused. ..... 7

D. The government's "reliance" theory is the good-faith argument the district court correctly rejected. ..... 10

E. Exclusion would deter, and its cost is the cost the Fourth Amendment already accepts. ..... 12

II. The Affidavit Never Told the Issuing Judge When Any Image Was Sent, and *Doyle* Makes That Error Plain. ..... 13

A. Mr. Seeger preserved the staleness argument. ..... 13

B. Even under plain-error review, *Doyle* establishes a clear error that affected Mr. Seeger's substantial rights. ..... 15

C. The government's collector and digital-persistence arguments assume what the affidavit never established. ..... 17

III. The District Court Erred in Rejecting Mr. Seeger's *Franks* Challenge. ..... 19

A. The omitted facts went to the reliability of the only source on the only facts that mattered. ..... 19

B. The district court's reasons for denying a hearing do not address the critical omission. ..... 21

C. The district court heard the *Franks* evidence, and this Court can decide the question on that record. ..... 22

IV. The Government Held Mr. Seeger's Devices for Twenty-One Days Without a Warrant and Without Any Explanation. ..... 24

A. Mr. Seeger preserved the delay argument. ..... 24

B. *Pratt* and *Mitchell* control. ..... 24

C. The record contains no justification for the delay. .................................. 26
CONCLUSION ................................................................................................ 27
CERTIFICATE OF COMPLIANCE.................................................................. 29
CERTIFICATE OF SERVICE.......................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona v. Evans*, 514 U.S. 1 (1995) ....................11

*Franks v. Delaware*, 438 U.S. 154 (1978).................... 2, 19, 21, 22, 23

*Groh v. Ramirez*, 540 U.S. 551 (2004) .................... 5, 6, 7, 12

*Herring v. United States*, 555 U.S. 135 (2009) .................... 1, 2, 4, 7, 8, 9

*Illinois v. Krull*, 480 U.S. 340 (1987) ....................11

*McDonald v. United States*, 335 U.S. 451 (1948) .................... 12

*Payton v. New York*, 445 U.S. 573 (1980) .................... 8

*Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir. 2002) .................... 6

*United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019) .................... 27

*United States v. Allen*, 631 F.3d 164 (4th Cir. 2011) .................... 23

*United States v. Bosyk*, 933 F.3d 319 (4th Cir. 2019) .................... 17

*United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990) .................... 19

*United States v. Davis*, 690 F.3d 226 (4th Cir. 2012) .................... 8

*United States v. DeQuasie*, 373 F.3d 509 (4th Cir. 2004) .................... 4

*United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011).................... 2, 12, 15, 16, 17, 19

*United States v. Evans*, 469 F. Supp. 2d 893 (D. Mont. 2007) .................... 12

*United States v. Franz*, 772 F.3d 134 (3d Cir. 2014) .................... 10

*United States v. Krueger*, 145 F.4th 460 (4th Cir. 2025).................... 17, 18, 27

*United States v. Leon*, 468 U.S. 897 (1984) .................... 4, 11

*United States v. Lowers*, 170 F.4th 134 (4th Cir. 2026).................... 9

*United States v. Lull*, 824 F.3d 109 (4th Cir. 2016).................... 20, 22, 23

*United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010) ........................................ 14, 24

*United States v. McCall*, 740 F.2d 1331 (4th Cir. 1984) ........................................ 15

*United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) ................................... 2, 25

*United States v. Moss*, 963 F.2d 673 (4th Cir. 1992) ................................................11

*United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) .......................... 2, 14, 24, 25, 26

*United States v. Qazah*, 810 F.3d 879 (4th Cir. 2015) ............................................... 7

*United States v. Ramirez-Castillo*, 748 F.3d 205 (4th Cir. 2014) ............................ 15

*United States v. Ray*, 141 F.4th 129 (4th Cir. 2025) ............................................. 6, 7

*United States v. Reivich*, 793 F.2d 957 (8th Cir. 1986) .......................................... 19

*United States v. Song Ja Cha*, 597 F.3d 995 (9th Cir. 2010) ...................................... 4

*United States v. Taylor*, 154 F.3d 675 (7th Cir. 1998) .............................................22

*United States v. U.S. District Court*, 407 U.S. 297 (1972) ......................................... 8

*United States v. Walker*, 191 F.4th 715, 2026 U.S. App. LEXIS 28223 (3d Cir. 2026) ....................................................................................................... 10

*United States v. Williams*, 548 F.3d 311 (4th Cir. 2008) ............................................ 4

*United States v. Wright*, 625 F. App'x 99 (3d Cir. 2015) ......................................... 10

*Utah v. Strieff*, 579 U.S. 232 (2016) .......................................................................... 9

**Rules**

Fed. R. Crim. P. 11(a)(2) ............................................................................................ 27

Fed. R. Crim. P. 51(b) ......................................................................................... 14, 24

## INTRODUCTION

On the evening of March 29, 2021, Steven Seeger stood in his front yard and asked a state trooper a simple question: did he have a warrant? The trooper said he did, and that a judge had signed it. JA102. But no judge had issued a warrant. The trooper held only his own affidavit, and he and a second trooper went into the house and took Mr. Seeger's phones, computer, and drives. JA104, JA443. The district court found exactly that: "this is a case with no search warrant — not a missing search warrant." JA445.

The government accepts that finding. It concedes that the entry violated the Fourth Amendment and that no exception to the warrant requirement applies. Gov't Br. 10, 14–15. On the warrant question, it defends the judgment on a single ground: the trooper meant well, so suppression would deter nothing. But the exclusionary-rule inquiry does not turn on whether an officer meant well. It asks "whether a reasonably well trained officer would have known that the search was illegal" in light of all the circumstances. *Herring v. United States*, 555 U.S. 135, 145 (2009). Every trained officer knows that a warrant is a judicial command to search, and that he must hold one before he crosses the threshold of a home. This trooper knew it too. He had applied for about two dozen warrants, he knew the process required two documents, and he drafted these papers himself. JA88-89, JA95-96,

JA120, JA129. The mistake was his own, it happened at the door of a home, and it came from a template his commander supplied and that he used again. JA88, JA128-129. That is not the "isolated negligence attenuated from the arrest" that *Herring* excused. 555 U.S. at 137.

The government's remaining arguments fare no better.[1] It calls Mr. Seeger's staleness and delay arguments abandoned, but his counsel pressed both at the suppression hearing, and the government answered the staleness argument on the merits. JA167-171, JA183. Even under plain-error review, this Court's decision in *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011), makes the staleness error plain: the affidavit never told the issuing judge when any image was sent. The government defends the twenty-one-day delay before the digital warrant with cases involving overwhelmed investigators, but no witness in this record ever gave a reason for the delay. And this Court in *Pratt* aligned itself with *Mitchell*, which held a delay of the same twenty-one days unreasonable. Finally, the government's *Franks* argument ignores what mattered most among the omissions: the only witness told the trooper she had "no idea" whether Mr. Seeger kept any image.

[1] Mr. Seeger's opening brief also challenged the restitution order (Issue V). On June 25, 2026, the Court dismissed that portion of the appeal under the plea agreement's appeal waiver. Mr. Seeger moved for reconsideration on June 27, 2026, which the Court denied. Mr. Seeger therefore does not address Issue V in this reply, but he preserves his position for further review.

JA45, JA124. The district court heard that testimony yet found no threshold showing; this Court can decide the question on this record.

Mr. Seeger asks the Court to hold the government to the rule that protects every home in this Circuit: officers must have a warrant before they enter, and the government may not keep the benefit of an entry made without one.

## ARGUMENT

### I. The Government Cannot Keep the Fruits of a Warrantless Home Entry by Calling the Trooper's Failure "Negligent."

The parties agree on what happened. Trooper Nicholson entered and searched Mr. Seeger's home without a warrant, and no exception to the warrant requirement applies. JA453-454; Gov't Br. 14–15. The only question is whether the exclusionary rule applies to that violation. It does.

#### A. Whether the trooper's conduct warrants exclusion is a legal question that this Court reviews *de novo*.

The government repeatedly frames the district court's ruling as a factual finding entitled to clear-error deference. Gov't Br. 13–15, 18–19. That framing is wrong. Mr. Seeger does not dispute the historical facts the district court found: that Nicholson presented an affidavit to Judge Shaffer, that the judge signed it, that no warrant ever issued, and that Nicholson believed he had one. JA445-447, JA461. He disputes the legal conclusion the court drew from those facts. When "there are

no facts in dispute, the applicability of the *Leon* exception . . . is purely a legal conclusion," and this Court reviews it *de novo*. *United States v. Williams*, 548 F.3d 311, 317 (4th Cir. 2008) (quoting *United States v. DeQuasie*, 373 F.3d 509, 520 (4th Cir. 2004)). The same is true of the related question whether police conduct was culpable enough to justify exclusion. *Herring* itself took the lower court's factual findings and decided for itself whether exclusion was warranted. 555 U.S. at 140, 144–46; *see also United States v. Song Ja Cha*, 597 F.3d 995, 1006–07 (9th Cir. 2010) ("deliberateness and culpability are legal determinations").

### B. A reasonably well-trained officer would have known that he could not search a home without a warrant.

The culpability inquiry under *Herring* "is objective, not an inquiry into the subjective awareness" of the officers. 555 U.S. at 145 (cleaned up). It asks "whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Id.* (cleaned up). The government's brief never engages that question. It recounts at length what Nicholson believed. Gov't Br. 18–21. But his belief is not the test.

Measured objectively, the answer is plain. No principle of Fourth Amendment law is more basic than that officers need a warrant before they search a home. The text of the Amendment says so, and this trooper knew what a warrant was. In his two years on the job, he had applied for about two dozen of them. JA83,

JA88. Every one of his applications came on the standard West Virginia form, which includes a separate warrant page that "command[s]" the officer "in the name of the State of West Virginia to search forthwith the premises." JA39, JA88-89. He understood that the process involved two documents: the affidavit and the warrant. JA96, JA120; *see* JA137 (Judge Shaffer: officers present "two documents"). Yet he typed his own affidavit from a template that contained no warrant page and no command to search. JA42-43, JA119-120, JA130. He could not recall whether anyone asked where the warrant was, and he accepted the stapled papers the clerk returned without confirming that a warrant was among them. JA120-121. Yet he told Mr. Seeger that he held a warrant signed by a judge. JA102.

*Groh v. Ramirez* forecloses the government's effort to excuse that conduct. There, as here, an officer prepared a warrant application that a magistrate approved, but the warrant he drafted failed to do what the Fourth Amendment requires. 540 U.S. 551, 554–55 (2004). The Supreme Court held that "[t]he fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity," because the Fourth Amendment requires a *warrant*, not supporting papers. *Id.* at 557. The defect made the warrant "so obviously deficient that we must regard the search as 'warrantless.'" *Id.* at 558. And the Court rejected the officer's claim of reliance on the magistrate: "because

petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid." *Id.* at 564. Nicholson's case is weaker than Groh's. Groh at least held a document titled "warrant." Nicholson held nothing but his own sworn statement.

*Groh* also makes it clear whose responsibility this was. "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Id.* at 563. Officers leading a search team therefore must "mak[e] sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct." *Id.* at 563 n.6 (quoting *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002)). Nicholson drafted the papers, presented them to Judge Shaffer, and led the search. JA88-89, JA104, JA125, JA445-447. The duty was his, and, simply, he did not meet it. Finally, *Groh* held that "[n]o reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional." *Id.* at 564. That is the same standard of objective reasonableness that governs the exclusionary rule. *Id.* at 565 n.8.

This Court applied the same principle last year. In *United States v. Ray*, an agent searched a phone under an authorization she herself drafted, which permitted

seizing the phone but not searching it. 141 F.4th 129, 131, 139–40 (4th Cir. 2025). The Court distinguished the "simple negligence" excused in *United States v. Qazah*, 810 F.3d 879, 887 (4th Cir. 2015), because "acting without written or verbal authorization is no 'technical' error." *Ray*, 141 F.4th at 141. "A lack of competence in this instance cannot be converted into good faith." *Id.* at 140. So too here.

The government emphasizes that defense counsel below described Nicholson as "well intentioned." *See* JA161. But good intentions are exactly the subjective inquiry that *Herring* forbids. 555 U.S. at 145. Good intentions do not substitute for doing what the Fourth Amendment requires, and *Groh* placed that requirement squarely on Nicholson. An officer who, by his own account, knew that a home search required two documents, and who carried only one into Mr. Seeger's house, acted at least with gross negligence toward the most basic requirement of the Fourth Amendment.

### C. This case does not involve the "isolated negligence attenuated from the arrest" that *Herring* excused.

The government's argument rests almost entirely on *Herring*. Gov't Br. 16–22. But *Herring* involved a different kind of mistake. There, someone in a neighboring county's sheriff's department failed to update its database to reflect a recalled warrant, and the arresting officers in another county relied on it. 555 U.S. at 137–38. The Court stressed that the arresting officers "did nothing improper," *id.*

at 140, and described the error as "isolated negligence attenuated from the arrest," *id.* at 137. It explained that "nonrecurring and attenuated negligence is . . . far removed from the core concerns that led us to adopt the rule in the first place." *Id.* at 144. And it cautioned that it did "not suggest that all recordkeeping errors by the police are immune from the exclusionary rule." *Id.* at 146.

None of *Herring*'s features is present here.

*First, the error was not attenuated.* This Court looks to "the culpability of the actors who committed the violations," judged "at the point of the constitutional violation." *United States v. Davis*, 690 F.3d 226, 253 (4th Cir. 2012). Here, the officer who failed to obtain a warrant is the same officer who drafted the papers, told Mr. Seeger he had a warrant, and conducted the search. JA95, JA102, JA104, JA443. No one in another county stood between the mistake and the entry. The mistake *was* the entry.

*Second, the error was not at the margins of the Fourth Amendment.* It was at its core. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. U.S. District Court*, 407 U.S. 297, 313 (1972)). *Herring* concerned an arrest on a stale database entry. It did not hold that an officer who

searches a house with no warrant at all may avoid exclusion by showing that he was careless rather than calculating.

*Third, the error was not isolated. Herring* recognized that "recurring or systemic negligence" can justify exclusion. 555 U.S. at 144. The record here shows a systemic problem. Nicholson did not invent the defective paperwork. His detachment commander supplied the template and directed him to use it. JA88, JA119-120. Nicholson later used "the exact same template" in the same judge's chambers on another occasion. JA128-129. Asked whether a warrant accompanied the affidavit that time, he did not say. JA128-129. A template that produces home searches without warrants, handed down by a supervisor and used more than once, is precisely the kind of practice the exclusionary rule exists to correct.

The government's other authorities do not fill the gap. *United States v. Lowers*, 170 F.4th 134 (4th Cir. 2026), on which the government relies for general principles, Gov't Br. 16–17, applied the attenuation doctrine. There, seven months, voluntary interviews, consents to search, and a confession separated an officer's warrantless viewing of computer files from the evidence the defendant sought to suppress. The Court expressly declined to reach good faith. *Lowers* applied one of the recognized exceptions that *Utah v. Strieff*, 579 U.S. 232, 238 (2016), describes. It did not endorse the freestanding "negligence" exception the district court applied

here. The Third Circuit authority on which the district court relied is no closer. In *United States v. Franz*, a valid warrant existed; the agent failed only to show the homeowner its attachment. 772 F.3d 134, 144 (3d Cir. 2014). In *United States v. Walker*, 191 F.4th 715, 2026 U.S. App. LEXIS 28223 (3d Cir. Sept. 15, 2026), the Third Circuit recently affirmed the district-court ruling cited below. There, the trooper held a tracker order and a search warrant, and the order expressly incorporated his affidavit, which asked permission for a limited "hit-and-hold" entry to secure a package. *Id.* at *4. The court reasoned that "[p]olice are not lawyers, so they are not grossly negligent simply because they mistakenly rely on incorporation language." *Id.* at *8. *See also United States v. Wright*, 625 F. App'x 99, 101–02 (3d Cir. 2015) (nonprecedential) (warrant valid when issued; prosecutors later removed its list of items). Each of these cases involved a judicial authorization that existed and an error at its edges. Nicholson had no order to misread and no incorporation language to rely on; he searched on the strength of his own affidavit alone. None of these cases holds that the government may keep the fruits of a home search conducted with no warrant at all.

### D. The government's "reliance" theory is the good-faith argument the district court correctly rejected.

The government also contends that Nicholson "reasonably relied on the judge's approval and the clerk's return of executed documents," invoking *Illinois v.*

*Krull*, 480 U.S. 340 (1987), *Arizona v. Evans*, 514 U.S. 1 (1995), and *United States v. Leon*, 468 U.S. 897 (1984). Gov't Br. 16–17, 20–21. That is the good-faith argument by another name, and the district court rejected it. JA451-454. The government has not cross-appealed, and its brief identifies no error in that ruling.

The district court was right. Each good-faith case the government cites involved reliance on something that actually existed: a warrant, a statute, a database entry, or binding appellate precedent. *See* Gov't Br. 17. Here, nothing existed on which to rely. This Court has refused to extend the good-faith exception beyond the established exceptions to the warrant requirement. The doctrine "remains tied at least to those moorings. It has not been converted into a general license to proceed outside those established constraints, guided only by general notions of reasonableness and good faith in conducting searches and seizures." *United States v. Moss*, 963 F.2d 673, 677 (4th Cir. 1992).[2]

Nor does Judge Shaffer's signature on the affidavit change the analysis. A judge's signature on an affidavit "merely indicates the document was signed and sworn to by the requesting officer in the [judge]'s presence." JA453 (quoting *United*

[2] Mr. Seeger's opening brief quoted *Moss* as stating that "the good faith exception to the exclusionary rule cannot apply where no warrant at all has been obtained." Opening Br. 23. That sentence does not appear in *Moss*, and counsel regrets the error. The accurate statement of *Moss*'s holding is quoted in the text above. The district court correctly relied on that holding. JA451-452.

*States v. Evans*, 469 F. Supp. 2d 893, 897–98 (D. Mont. 2007)); *see* Gov't Br. 15 (relying on *Evans*). And *Evans* suppressed the evidence because the officers "had only a piece of paper." 469 F. Supp. 2d at 900. The Fourth Amendment requires that a warrant "issue," and "[t]he presence of a search warrant serves a high function." *Groh*, 540 U.S. at 557 (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)). That function was lost here. Mr. Seeger asked for a copy of the warrant, JA187, but there was no warrant for Trooper Nicholson to give him.

Finally, even if a warrant had issued on this affidavit, reliance on it would not have been objectively reasonable. As shown in Part II, the affidavit never told Judge Shaffer when any image was sent, how old the complainant was, or that 310 Hilltop Drive was Mr. Seeger's home. JA42-43. "[A] magistrate's signature cannot render reasonable an objectively unreasonable failure to support a warrant application with evidence necessary to demonstrate probable cause." *United States v. Doyle*, 650 F.3d 460, 476 (4th Cir. 2011). The judge's signature therefore cannot carry the weight the government places on it.

**E. Exclusion would deter, and its cost is the cost the Fourth Amendment already accepts.**

The government argues that exclusion would impose "severe" costs because the evidence concerns serious offenses. Gov't Br. 22–23. The cost of exclusion is real in every case where the rule applies; it is not a reason to withhold the rule from

the core of the Amendment. Here, the deterrent value is concrete and easy to achieve. Officers will learn to confirm that they hold a signed warrant before they enter a home, and to show it when the homeowner asks. Supervisors will learn not to distribute templates that omit the warrant itself. Those are modest lessons, and they protect every household in this Circuit.

The benefit the government obtained from this entry was not modest. Every image and message charged in this case traces to the devices Nicholson carried out of Mr. Seeger's home. JA23-28, JA443-444, JA480-481. The government identified P.G., the alleged victim in Count One, only through a text message found on one of those devices. JA155. Allowing the government to keep that benefit would teach officers that the warrant requirement binds them only when they remember it. This Court should reverse the denial of suppression.

## II. The Affidavit Never Told the Issuing Judge When Any Image Was Sent, and *Doyle* Makes That Error Plain.

### A. Mr. Seeger preserved the staleness argument.

The government says Mr. Seeger made only a "passing reference" to staleness before "abandoning" it. Gov't Br. 2, 31–32. The record shows otherwise. At the suppression hearing, defense counsel told the court that "the warrant information is stale." JA167. He explained why. The complainant was twenty-one, she was describing events from years earlier, the images could be "as much as seven

years old," and she "didn't know if Seeger had any such documents, if he'd kept any of those documents." JA167-168. He identified the only thing bridging that gap: what he described as the affidavit's premise that people "keep stuff and keep it for long periods of time." JA168; *see* JA43 (¶ 7). And he told the court that this "raises a staleness issue that is pretty significant." JA168.

That is enough. A party preserves a claim of error by "informing the court . . . of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b); *see United States v. Lynn*, 592 F.3d 572, 577–78 (4th Cir. 2010) (Rule 51 rejects "formulaic" objection requirements). In *United States v. Pratt*, this Court held a delay argument preserved even though the defendant raised it only at the suppression hearing and not in his motion papers. 915 F.3d 266, 271 n.4 (4th Cir. 2019). Here, the government noted that staleness had not been raised in the written motion, but it understood the argument well enough to answer it on the merits at the same hearing. JA183 ("[T]here's reason to believe that those images would still be maintained . . . ."). The district court's written order did not address the argument. *See* JA462-470; Gov't Br. 31–32 (conceding that the order "was silent on those

grounds").[3] A court's failure to rule on an argument that was squarely presented does not convert the argument into a forfeited one.

### B. Even under plain-error review, *Doyle* establishes a clear error that affected Mr. Seeger's substantial rights.

The government agrees that an error is plain when "the settled law of the Supreme Court or this circuit establishes that an error has occurred." Gov't Br. 31 (quoting *United States v. Ramirez-Castillo*, 748 F.3d 205, 215 (4th Cir. 2014)). This Court's decision in *Doyle* is that settled law.

In *Doyle*, officers sought to search a home for child pornography based on a report that the defendant had shown a child "pictures of nude children." 650 F.3d at 472. The affidavit did not say when. This Court recognized that in child-pornography cases "substantial amounts of time can elapse before probable cause . . . becomes 'stale.'" *Id.* at 475. But the defect in *Doyle* was not that too much time had passed. It was "that there was insufficient evidence presented to the magistrate to determine how much time elapsed." *Id.* As the Court explained, "there is no

[3] Mr. Seeger's opening brief stated that the district court rejected the staleness argument. Opening Br. 12, 33. More precisely, the order's discussion at JA462-464 addresses whether the affidavit established a nexus to the residence. It does not address staleness. Nor does the language that the opening brief attributed to the order on this point (that such evidence "may be kept for long periods") appear in it. The opening brief also described *United States v. McCall*, 740 F.2d 1331 (4th Cir. 1984), as invalidating a warrant on stale information and attributed to it language that does not appear in the opinion. Opening Br. 31, 41. In fact, *McCall* upheld the warrant. 740 F.2d at 1337. Counsel regrets these errors.

support for the contention that once probable cause exists to search for child pornography, it remains valid ad infinitum." *Id.* Because the affidavit "was completely devoid of indicia that the probable cause was not stale," the Court held that the warrant was so deficient that even good-faith reliance on it was unreasonable. *Id.* at 475–76.

This affidavit has the same defect. It alleges that the offense occurred "on or about 29 March 2021," the day Nicholson spoke to the complainant. JA42. It then says that she sent images "when she was a minor" and had a relationship with Mr. Seeger "while she was a minor." JA43. It never says when that was. It never says how old she was in 2021. It never says when the relationship ended. The affidavit in *Doyle* likewise gave "no indication of the age of the children." 650 F.3d at 475 n.17. A reader of the affidavit could not tell whether the images were sent last month or seven years earlier. In fact, the charged images of K.S. were made in May 2014, when she was fifteen. JA26, JA480-481. By March 2021 she was twenty-one, and she told Nicholson twice that she had "[n]o idea" whether Mr. Seeger had kept any image. JA45, JA124. Judge Shaffer learned none of this.

*Doyle* thus makes the error plain. The affidavit could not support a finding of present probable cause, and the affidavit's only bridge across the gap is a generic statement that "it is not uncommon for people to save photos." JA43. *Doyle*

involved a similar affidavit and held that reliance on the resulting warrant was "manifestly unreasonable." 650 F.3d at 476. Mr. Seeger needs much less. He needs only to show that this affidavit did not establish probable cause.

The error also affected Mr. Seeger's substantial rights. He entered a conditional plea that preserved his suppression challenges. JA215. Every image and message charged in the case came from the devices seized on March 29, 2021. JA443-444, JA480-481. Without them, the government would never have identified P.G., the alleged victim in Count One. JA155. There is far more than a reasonable probability that the outcome would have been different. And a home search on an undated affidavit, carried out without any warrant at all, seriously affects the fairness and integrity of judicial proceedings.

**C. The government's collector and digital-persistence arguments assume what the affidavit never established.**

The government relies on *United States v. Krueger*, 145 F.4th 460 (4th Cir. 2025), and the "collector inference." Gov't Br. 33–36. But *Krueger* confirms that the inference "depends on the preliminary finding that the suspect is a person interested in images of child pornography." 145 F.4th at 465 (quoting *United States v. Bosyk*, 933 F.3d 319, 331 (4th Cir. 2019)). In *Krueger*, the affidavit described four days of downloading and uploading child sexual abuse material over a file-sharing network, eleven months before the seizure. *Id.* at 462–63, 465. The magistrate

knew exactly when the conduct occurred and could judge its age. Here, the issuing judge could not. *Krueger*'s second rationale fails for the same reason. The fact that digital files persist, *id.* at 465, helps only if the affidavit establishes when the files were created and why they would be on devices in the place to be searched. This affidavit established neither. It never said that 310 Hilltop Drive was Mr. Seeger's home, JA42-43, and at least some of the conduct it described occurred while Mr. Seeger lived in another county. JA23-26, JA113.

The government also points to paragraph 6 of the affidavit, which states that Mr. Seeger "has sent sexually explicit images of [K.S.] to her friends and family." Gov't Br. 23, 32; JA43. That paragraph cannot supply recency, because the images it describes were photographs of K.S. as an adult. JA71, JA74, JA124, JA440. They are evidence of the Texas complaint, not of child pornography in a West Virginia home in 2021. The government's reliance on statements Mr. Seeger made to Corporal Lee and Trooper Nicholson, *see* Gov't Br. 3, 23, fares no better. None of those statements appears in the affidavit, and Judge Shaffer could not have relied on them. JA42-43.

Finally, the government argues that K.S.'s description of repeated requests shows "a pattern of continuing activity." Gov't Br. 33. A pattern that ended years before the warrant application does not make old information fresh. And the

affidavit did not tell the judge when this pattern ended. Under *Doyle*, that omission is the whole problem.

## III. The District Court Erred in Rejecting Mr. Seeger's *Franks* Challenge.

The government's principal answer to the *Franks* claim is that Corporal Lee's doubts about K.S. pointed toward guilt, because Lee suspected she had sent images while a minor. Gov't Br. 27–29. On that view, disclosing his doubts would only have strengthened probable cause. That argument misunderstands what the issuing judge needed to know and why.

### A. The omitted facts went to the reliability of the only source on the only facts that mattered.

The affidavit rested entirely on one source: K.S., interviewed by telephone on the day Nicholson applied. JA42-43, JA87. Nothing corroborated her account. Under *Franks v. Delaware*, 438 U.S. 154 (1978), and this Court's decisions, an affiant may not omit facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). Information about a sole source's reliability can be material when probable cause depends on that source. *See United States v. Lull*, 824 F.3d 109, 116–18 (4th Cir. 2016).

Nicholson knew two things about K.S.'s reliability that he did not tell Judge Shaffer. First, Corporal Lee had told him that K.S. "provided a mix of information . . . that was at times not accurate," and that she "would then admit to not telling correct information and recant." JA45. Nicholson testified that the shifting answers concerned "when they started talking," "when they stopped talking," and "when some of the pictures were sent." JA86. Those were the facts on which probable cause depended: how old K.S. was, and when the images were sent. The government focuses on the direction of Lee's hunch. But the point is not which way Lee guessed. The point is that the sole source had given shifting accounts on exactly the questions the affidavit left unanswered.

Second, and more important, K.S. told Nicholson directly, twice, that she had "[n]o idea" whether Mr. Seeger had kept any image. JA124; *see* JA45 (Nicholson's report: "The victim advised she is unaware if the suspect retained any photographs."). Nicholson recorded that statement in his own report and then left it out of the affidavit. That omission goes straight to the question every search warrant must answer: whether evidence will be found in the place to be searched now. *See* Opening Br. 40–41. Nicholson's affidavit also stated that Mr. Seeger had sent "sexually explicit images" of K.S. to her friends and family, without disclosing that those images depicted her as an adult and were the subject of a separate

revenge-porn complaint. JA43, JA71, JA74; *see* Opening Br. 38. Read alone, paragraph 6 suggests a recent distribution of images of a minor. It was nothing of the kind.

A corrected affidavit would therefore have told Judge Shaffer this: an adult complainant, reached by telephone that day, said that at some unstated time while she was a minor she sent images to Mr. Seeger. She had given shifting accounts of her age and the timing. She had no idea whether he kept anything. And the recent images he sent others depicted her as an adult. That affidavit does not establish a fair probability that child pornography would be found at 310 Hilltop Drive in March 2021. At a minimum, it raises the substantial question that *Franks* requires a hearing to resolve.

### B. The district court's reasons for denying a hearing do not address the critical omission.

The district court accepted Nicholson's explanation that he relied only on what he heard "directly from the victim" and that Lee's assessment concerned a separate Texas investigation. JA467; *see* JA92. That explanation cannot account for the most important omission. K.S.'s statement that she had no idea whether Mr. Seeger kept any image came *directly from the victim*, in the very interview Nicholson relied on. JA45, JA124. Nicholson chose to include her statements that supported a search and to leave out the one that undercut it. That selection took from Judge

Shaffer a judgment that was his to make. Deciding that a source is reliable for some purposes but not others "is an assessment that is for the magistrate, not [the affiant], to make." *Lull*, 824 F.3d at 116. An officer in Nicholson's position would know that whether evidence remained at the house was the central question. Leaving out the only witness's statement on that very question was at least reckless. *See id.* at 116–17.

### C. The district court heard the *Franks* evidence, and this Court can decide the question on that record.

The government argues that any error was harmless because the hearing on the motions to suppress was effectively a "pre-*Franks* hearing." Gov't Br. 29–30 (citing *United States v. Taylor*, 154 F.3d 675, 680 (7th Cir. 1998)). Nothing in the record supports that label. The district court did not set a preliminary hearing on whether Mr. Seeger could make a *Franks* showing. It set a hearing on "Defendant's Motions to Suppress," and Mr. Seeger's *Franks* request was part of those motions. *See* JA14, JA34-35, JA49-50; Gov't Br. 26, 38. *Taylor* is not to the contrary. The defendant there offered only "conclusory assertions." 154 F.3d at 680. Mr. Seeger's showing rested on Nicholson's own report. JA45.

And the hearing produced the very evidence that a *Franks* hearing exists to produce. Corporal Lee testified about his assessment of K.S. JA72-78. Nicholson was questioned on direct and cross-examination about what he left out of the

affidavit, including K.S.'s statement that she had "[n]o idea" whether Mr. Seeger kept any image. JA86, JA92, JA124. Having heard that testimony, the court announced that the defense had not "unlocked the door to an actual *Franks* analysis or a *Franks* hearing," because its "concern is that there is simply no warrant." JA182. In other words, the court took the evidence and then declined to apply *Franks* to it. That was error.

The government's own description of the hearing confirms that the record is complete. It calls the proceeding a "two-day evidentiary hearing" at which Mr. Seeger "was able to cross-examine Trp. Nicholson and Cpl. Lee on the pertinent matters." Gov't Br. 2, 29. Nothing remains to be found. And the government agrees that "[a] determination of probable cause is an issue of law that is reviewed de novo." Gov't Br. 25 (quoting *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011)). This Court has decided both recklessness and materiality on a *Franks* record and reversed the denial of suppression. *Lull*, 824 F.3d at 116–18, 120. It should do the same here. For the reasons in Part III.A, the corrected affidavit does not establish probable cause, and the evidence should be suppressed.

## IV. The Government Held Mr. Seeger's Devices for Twenty-One Days Without a Warrant and Without Any Explanation.

### A. Mr. Seeger preserved the delay argument.

Defense counsel told the district court that "[t]he digital search was delayed," that Mr. Seeger "was entitled to get his data back . . . promptly," and that the twenty-day gap before the digital warrant was "some deprivation of my client's possessory" interest. JA170-171. When the court asked how the delay rose to the level of a Fourth Amendment violation, counsel answered that it was "an independent Fourth Amendment violation." JA171. The court understood the argument and engaged with it. JA171. Under Rule 51(b), nothing more was required. *Lynn*, 592 F.3d at 577–78. An argument is preserved if it is "pressed or passed upon," and Mr. Seeger pressed this one. *Pratt*, 915 F.3d at 271 n.4.

### B. *Pratt* and *Mitchell* control.

The government recognizes that this Court evaluates a delay in seeking a warrant by balancing the individual's possessory interest against the government's justification and diligence. Gov't Br. 38–39. Under that framework, "[g]iven [the defendant's] undiminished interest, a 31-day delay violates the Fourth Amendment where the government neither proceeds diligently nor presents an overriding reason for the delay." *Pratt*, 915 F.3d at 273. In reaching that holding, this Court surveyed the decisions of other circuits and explained that Pratt's "case is closest to

*Mitchell* because the government has no persuasive justification for the delay." *Id.* at 272.

*Mitchell* involved a delay of twenty-one days, the same delay at issue here, as this Court itself recognized. *Pratt*, 915 F.3d at 272; *United States v. Mitchell*, 565 F.3d 1347, 1351, 1353 (11th Cir. 2009). The government's own brief acknowledges that the Eleventh Circuit found that delay unreasonable. Gov't Br. 39. The court explained that holding a computer hard drive "for over three weeks before a warrant was sought constitutes a significant interference with [the owner's] possessory interest." 565 F.3d at 1351. Because "[n]o effort was made to obtain a warrant within a reasonable time," the court held the delay unreasonable and concluded that the motion to suppress should have been granted. *Id.* at 1353.

This case is stronger than either *Pratt* or *Mitchell*. Officers seized not one device but six: two phones, two external drives, a memory card, and a laptop. JA443. Mr. Seeger did not consent to the seizure, and he was not arrested; the government has never claimed consent or any other exception. JA99, JA103, JA449. His possessory interest was therefore undiminished. *See Pratt*, 915 F.3d at 272–73. The government asserts that Mr. Seeger told officers the devices were "old," Gov't Br. 41, but it cites no page of the joint appendix for that assertion. And unlike in *Pratt* and *Mitchell*, the initial seizure was itself unconstitutional, because it

occurred during a warrantless search of a home. JA453-454. An officer who has already taken property without a warrant has more reason, not less, to bring it promptly before a judge.

**C. The record contains no justification for the delay.**

The government's brief offers explanations that no witness gave. It points to the detachment's eight troopers, Gov't Br. 41 (citing JA82), but Nicholson never said that staffing caused the delay. It relies on cases in which investigators faced "competing investigative demands" or "limited resources," Gov't Br. 40, but no one testified to either, here. *Pratt* distinguished those same cases because, unlike the agencies there, "the FBI's resources were not overwhelmed." 915 F.3d at 272. The same is true here: nothing in the record suggests that the state police were overwhelmed. Nicholson's only testimony about the digital warrant concerned why he needed one, namely the evidence room's practice. JA126-127. Nothing in the record explains why it took twenty-one days to obtain it, or why the devices then sat for another week before reaching the laboratory. JA109-111.

The government responds that defense counsel did not develop the record. Gov't Br. 41–42. But under *Pratt*, the delay is unreasonable when the government "neither proceeds diligently nor presents an overriding reason for the delay." 915 F.3d at 273. The government chose not to present a reason, and that choice has

consequences. When the government acts without a warrant, "it bears the burden of proving, by a preponderance of the evidence, that an exception to the warrant requirement applies." *United States v. Aigbekaen*, 943 F.3d 713, 719 (4th Cir. 2019). It has identified none. This Court has stressed that the Fourth Amendment "requires police officers to diligently pursue a search warrant once they have seized a person's property." *Krueger*, 145 F.4th at 467. A record silent on diligence does not establish it.

The digital evidence, and the counts that depend on it, should have been suppressed for this independent reason.

## CONCLUSION

The Court should reverse the order denying Mr. Seeger's motions to suppress, vacate his convictions and sentence, and remand with instructions to suppress the evidence obtained from the March 29, 2021, search of his home and its fruits, so that Mr. Seeger may withdraw his conditional plea under Federal Rule of Criminal Procedure 11(a)(2).

Respectfully submitted,

/s/ Elizabeth Franklin-Best
Elizabeth Franklin-Best
ELIZABETH FRANKLIN-BEST, P.C.
3710 Landmark Drive, Suite 113
Columbia, South Carolina 29204
(803) 445-1334

Martin P. Sheehan
SHEEHAN & ASSOCIATES, P.L.L.C.
1140 Main Street, Suite 333
Wheeling, West Virginia 26003
(304) 232-1064

*Counsel for Appellant*

Dated: November 19, 2026

## CERTIFICATE OF COMPLIANCE

1. **Type-Volume Limit.** This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, table of contents, table of authorities, signature block, and certificates of counsel), this brief contains 6,413 words.

2. **Typeface and Type Style.** This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity A.

/s/ Elizabeth Franklin-Best
Elizabeth Franklin-Best
*Counsel for Appellant*

Dated: November 19, 2026

## CERTIFICATE OF SERVICE

I certify that on November 19, 2026, I electronically filed the foregoing Reply Brief of Appellant with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all registered counsel of record, including Kimberley D. Crockett, Assistant United States Attorney, 217 West King Street, Martinsburg, West Virginia 25401.

/s/ Elizabeth Franklin-Best
Elizabeth Franklin-Best